588 So.2d 586 (1991)
IN RE REPORT OF the COMMISSION ON FAMILY COURTS.
No. 77623.
Supreme Court of Florida.
September 12, 1991.
Rehearing Denied November 19, 1991.
James R. Stewart, Jr., Circuit Judge, Fifteenth Judicial Circuit, West Palm Beach, *587 Ira Abrams, Chairman, Family Law Section of the Florida Bar, Miami, and Marjorie Head, Plantation, on behalf of the Broward County Coalition for Judicial Awareness, for petitioners.
Dale Ross, Chief Judge, Seventeenth Judicial Circuit, Fort Lauderdale, Lori Parrish, Chairman, Broward County Comm'rs, Fort Lauderdale, and Paul A. Louis of Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, Miami, in Opposition.
OVERTON, Justice.
This cause is before the Court on the Report of the Commission on Family Courts (Commission). The Commission was established by the legislature in chapter 90-273, Laws of Florida. That legislation directed the Commission to: (1) develop specific guidelines for the implementation of a family law division within each judicial circuit; (2) provide recommendations for statutory, rule and organizational changes; and (3) recommend necessary support services.
The following recommendations were made by the Commission:
A. Establishment of Family Divisions

We recommend that the Supreme Court require each judicial circuit to submit to the court for approval a local rule establishing a family division in its circuit or a means to coordinate family law matters that affect one family if the circuit or part of the circuit is of such limited size that it is unable to administratively justify such a division. The local rule should be submitted by September 1, 1991 to the Supreme Court for approval and implemented in the judicial circuit by January 1, 1992. We find no need for legislative action. The authority to establish such a division is presently within the judicial branch.
1. The jurisdiction of the family division should include dissolution of marriage, simplified dissolution of marriage, child custody and support, URESA, domestic violence, name changes, adoptions, paternity suits, [and] modification proceedings; and each circuit should consider inclusion of juvenile dependency and delinquency matters at least for administrative purposes. Each circuit should develop a procedure that will provide a means to assign all current family law matters, including matters involving juvenile dependency and delinquency proceedings that [affect] one family, to one judge.
2. Judge assignment and rotation. Judges should be assigned to the family division by the chief judge, who should give special consideration to the aptitude, demonstrated interest, and experience of each judge, for a term of not less than two years with the opportunity to request rotation after three years. To the extent possible, rotation of judges should be staggered within the family division.

Commentary: In developing a rule providing for a family division, each circuit should consider the geographic location of various court facilities within the circuit and accessibility of the public to the location of judges serving in the division as well as proper judicial administrative practices. In considering an appropriate rule, it is not intended that rural and semi-rural counties establish a family division to serve the entire circuit. We recognize that the geographic configuration of the circuits, together with the multiple types of existing court facilities, must be taken into consideration. It is contemplated that each circuit should be treated individually in considering the appropriateness of a family division plan. We acknowledge that the type of plan that could work well in a metropolitan circuit consisting of one county would not be appropriate for circuits having three to eight counties of various populations. We further acknowledge that there are geographic areas in the state where one or two judges handle the entire jurisdiction of the circuit court. All of these factors must be taken into account to assure that the public is best and conveniently served. The commission believes that it is important to allow each circuit the flexibility *588 to design a family division based on its unique geographic and administrative conditions, taking into account the existing facilities.
Circuits should include in their plan procedures for coordinating the delivery of services when persons from one family are involved in family law matters before two or more judges. It is particularly important that there be administrative coordination between dissolution and dependency proceedings involving the same child or children and that the family division be administratively connected for this purpose to the juvenile jurisdiction of the circuit court. There must be coordination of the court's consideration of matters affecting one family. We have found no justification to have situations such as have been presented to the commission which indicate that families were required to appear before one judge in a dissolution proceeding that included determination of custody of the children and at the same time to have a hearing before another judge concerning the juvenile dependency of one of the children including the determination of the custody of that child. To properly effect this coordination, it appears one administrative judge should be designated in metropolitan circuits to be responsible for this entire jurisdiction.
With regard to the assignment and rotation of judges, the commission found that this assignment is considered by most members of the judiciary as the most stressful and difficult of all the jurisdictions in the circuit court. Because a strict rule of law is impossible to apply in these marital and family law matters, the law gives to the judge broad discretionary powers to try to resolve the issues in an equitable and just manner. Because of these broad discretionary powers, judges recognize that they are making decisions where, as one said, "I am playing God." More than in any other proceeding, the parties in these types of cases are emotional and have strong feelings of animosity, which make it difficult for the parties to think rationally in presenting the matter for resolution to the judge. Judges, by the nature of their responsibility, are trained to be problem-solvers. However, in many of these instances, the problems given to the judge to solve border on the impossible. For example, it is not unusual for judges to hear dissolution cases that are brought about by the financial problems of the parties. The judge is left with the problem of how to provide for two family entities to live on funds that one family unit could not live on. Given the emotions, the animosity, and the individual concern of judges for the children of these parties, the problems are stressful for the judge and are not easily left in the courtroom. For most there is a need for a sabbatical from this assignment and, consequently, we suggest that there be rotation every three years. Further, we were advised that where there is sufficient family law work for only one judge, it would be beneficial for the administrative operation that two judges be assigned one-half time to division matters rather than one judge full time. Although there is a need for rotation, it is also important that the judges assigned to this division have a commitment to this important judicial responsibility and a willingness to participate in education and training programs as well as the ability to work with the other assigned judges as a coordinated team. In addition, it is necessary that the local bar association remain involved in the implementation and ongoing operation of the family division for its success.
B. Resources

We find that it is essential that the family divisions receive proper resources to fulfill their responsibilities, including: court connected mediation; domestic violence assistance programs; guardians ad litem to represent dependent children and children in contested custody cases; home assessment services; sufficient staff to operate *589 enforcement of support services; and case coordination/receptionist staff.

Commentary: A fully staffed mediation program is essential in these types of proceedings. It has now been clearly established that mediation can resolve a high percentage of these disputes if they are brought before a competent mediator at an early stage of the proceeding. The fact that the mediation service is court-connected is important because it presents the mediator to the parties as a person who will be fair and impartial because of being an arm of the court.
Child assessment services and enforcement of support services must be available for all types of cases within the family division. There is no justification for child assessment services that are available only in juvenile dependency matters and not available when the same type of decision is being made in a dissolution-custody proceeding. Nor is there any justification for there to be a substantial difference in the handling of enforcement of support matters for Title IV cases as distinguished from non-Title IV cases. The underlying basis for the action  that the child is not receiving support  is the same and the service should be the same.
C. Pilot Circuits

We recommend that three circuits of diverse needs be designated as pilot circuits by the Supreme Court for family divisions. It is contemplated that these circuits would be totally funded by the legislature in the 1992 legislature for all necessary resources and that each of the family court divisions would be closely monitored by the supreme court and audited by a performance audit conducted by the auditor general's office after two years of operation.

Commentary: The intent of this pilot program is to develop a model family division plan that effectively provides service to the public in this most difficult area of the law.
D. Education and Training

The commission recommends that all judges assigned to the family division receive training and education in family law courses before being assigned to that division or as soon as possible after such assignment. Further, all family division judges should participate in family mediation training within the first year of their assignment to this division.

Commentary: It is hoped that the assignment of a judge to this division will be made soon enough in advance to assure that the judge will have an opportunity to attend a basic family law educational program. The Florida Court Education Council presently has such a curriculum in place. We also suggest that the Florida Court Education Council develop specialty courses available on a regular basis for judges in the family divisions. These courses could include subjects such as family mediation training, uniform child custody act, child sexual abuse matters, psychological testing, and taxation as it affects family law cases.
E. Conclusions

The Commission has concluded that the public will be better served in most instances by the establishment of a family division. This Commission has received information from one metropolitan circuit that, when all family law cases were assigned as part of a general civil division, it took an average of eighteen months to complete a dissolution proceeding. After the establishment of a family division, the time to complete a dissolution proceeding has been reduced to six months. As important is the need to assign all family court matters of one family to one judge. Further, it is clear that the resources necessary for proper family law resolution can be more effectively and efficiently provided where there is a family division. It is only logical that it is easier for personnel responsible for mediation, child assessment *590 services, or enforcement of support services to provide those services to the judges in a family division rather than to all the judges in a general civil division. In making these recommendations, we have fully considered the following reports:

Report of the Family Court Subcommittee, Florida Judicial Council, June 1990

A Family Court for Children, Governor's Constituency for Children, September 1989

The Florida Bar Commission for Children 1990 Legislative Recommendations, The Florida Bar Commission for Children, January 1990

Families in Court, National Council of Juvenile and Family Court Judges, May 1989

Report on HRS Nonlawyer Counselors, Supreme Court Committee, February 1989

Report to Executive Council of Family Law Section of the Florida Bar, Bench/Bar Committee of the Florida Bar, June 1987

Report of the Study Commission on Child Welfare, March 1991, directed by the Florida Legislature
The legislature has the authority to require a study of the need for a family division pursuant to article III, section 7, of the Florida Constitution. This Court has jurisdiction to establish a family division in accordance with the provisions of article V, section 20(c)(10), of the Florida Constitution, (now section 43.30, Florida Statutes (1989)); article V, section 2, of the Florida Constitution; and the policy decision made by the legislature in chapter 90-273, Laws of Florida, directing the development of
specific guidelines for the implementation of a family law division within each judicial circuit. Such family law divisions shall operate with as much consistency as possible throughout the state.
Ch. 90-273, § 10(3), Laws of Fla.
The Commission was created in part because of reports of various entities which had recommended a family division or a family court in this state, including: (a) the Governor's Constituency for Children; (b) Florida Task Force on Marriage and the Family Unit, Florida State University Governmental Law Center and Institute for Social Research; (c) the Task Force on the Future of the Florida Family; (d) the Supreme Court Committee on the Department of Health and Rehabilitative Services Nonlawyer Counselors; (e) committees of The Florida Bar and the National Council of Juvenile and Family Court Judges; (f) the Metropolitan Court Judges Committee; and (g) the Study Commission on Child Welfare.
The Commission received testimony from those involved with the operation and administration of family divisions in circuits that presently have successful family divisions, as well as from individuals who were familiar with the unsuccessful family division in the Eleventh Judicial Circuit. The Commission also considered testimony from representatives of other groups that had examined and recommended the establishment of a family division, including the Florida Judicial Council Subcommittee on Family Courts, The Florida Bar's Family Law Committee, and the Governor's Constituency for Children. Although these groups recommended the establishment of a family division, they differed on the extent of the jurisdiction of such a division. All of them agree that dissolution, custody, visitation relief, property, URESA, name change, paternity, adoption, and domestic violence should be within the family division. However, The Florida Bar Commission for Children, and the Governor's Constituency for Children would also include juvenile delinquency and dependency jurisdiction. The Governor's Constituency for Children would extend the jurisdiction even further to include probate, guardianship, and trust proceedings.
In its recommendations, the Commission took a middle ground approach and recommended that, while it would not mandate the inclusion of juvenile dependency and delinquency proceedings, each circuit should consider the inclusion of those jurisdictions for administrative purposes. The Commission emphasized the need to have all current family matters assigned to one judge.
*591 We approve the recommendations of the Commission on Family Courts, and we accept the Commission's recommendation concerning the jurisdiction of a family division. We emphasize our support for the recommendation that there be a means to assign all family court matters that affect one family, including dissolution of marriage, custody, juvenile dependency and delinquency proceedings, to one judge. In approving these recommendations, we note the need for each circuit to design a family division to best serve its particular area. Geography, population, and available facilities are all factors that must be considered in tailoring a family division to the needs of a particular circuit.
We agree that the assignment of a judge to family law cases is one of the most difficult and stressful of all the responsibilities of a circuit judge. Consequently, we acknowledge that there is a need for rotation among judges assigned to the family division. For such a division to work, judges must be committed to carrying out this judicial responsibility and willing to participate in education and training programs in this area of the law.
Family law is a developing and expanding area of court jurisdiction. As noted in the Commission's report, approximately fifty percent of the civil court jurisdiction in our circuit courts, without the inclusion of juvenile delinquency and dependency cases, is comprised of family law matters. New techniques are regularly being implemented to try to make this jurisdiction of our courts work more effectively. Further, we recognize that delays in family law matters aggravate the parties' problems. Clearly, an early resolution is best for all concerned. We believe that implementing the Commission's recommendations will benefit the public by expediting the resolution of family law matters.
We reject the arguments that family divisions will not accomplish the desired results and may impede fair and unbiased handling of family matters. We also reject the claim that so-called specialists in the field of family law will have an unfair advantage in a family division. Presently, five out of the twenty circuits in this state have family divisions, and no evidence was presented to the Commission that those circuits have these alleged problems.
We hold that each judicial circuit should develop a local rule establishing a family division in its circuit or a means to coordinate family law matters that affect one family if the circuit or part of the circuit is of such a limited size that it is unable to administratively justify such a division, and direct that such a local rule be filed with this Court on or before January 6, 1992.[1]
In accepting these recommendations, we emphasize to the legislature that these family divisions cannot operate effectively without appropriate state support. The creation of a family division will not be a panacea for all family law problems. To leave it to each local government to fund the necessary services for a family division is a prescription for inequality in the family services available to the citizens of this state and possible failure of the family law divisions. In order for a family division to operate effectively, it needs: (1) court-connected mediation services; (2) home assessment services for custody cases; (3) sufficient staff to coordinate the family division operation; and (4) sufficient staff to operate enforcement of support services. These are services that this Court cannot mandate a local government to provide. In some circuits, these services are being provided because of the local government's desire to provide better service for its citizens.
Recognizing that funds are not now available, we request each circuit, in formulating its local rule, to develop its plan in accordance with presently available local resources. Each circuit should also develop an appropriate plan for its jurisdiction *592 as if the family division were properly funded by the state.
In conclusion, we believe that the creation of family divisions will provide a better means for resolution of family issues in this state, and we ask the judiciary and the legal profession to cooperate in implementing these divisions where they presently do not exist.
It is so ordered.
SHAW, C.J., and BARKETT, GRIMES and HARDING, JJ., concur.
McDONALD, J., concurs in part and dissents in part with an opinion, in which KOGAN, J., concurs.
McDONALD, Justice, concurring in part and dissenting in part.
Because the report and opinion mandated a family division in all populous circuits, I dissent in part.[2] If each circuit had the option of either establishing a family division or, in the alternative, submitting a workable plan for the handling of family matters, I would concur. I believe it better to leave the decision to each circuit as to whether a separate family division would be required. Should it be shown that alternative methods of handling family matters are inefficient, inequitable, more costly, or have greater problems than those utilizing a family division, I would review the plan and experiences of that circuit to then determine whether a separate family division is mandated.
I fail to see any reason or justification for placing juvenile delinquency with family courts. Juvenile dependency is a closer question.
KOGAN, J., concurs.
NOTES
[1] As the Commission emphasized in its commentary, the needs of a particular circuit are extremely important in developing such a rule.
[2] I hasten to add that I join all in seeking a fair, efficient, timely, and cost-effective method of resolving all problems arising from family relationships.