Opinion
 

 GEORGE, C. J.
 

 Respondent superior court ordered that petitioner Wilson Curie, a judge of the same superior court, be disqualified from conducting further proceedings in a criminal action against real party in interest Andrew Madison Gleason. Respondent agreed with Gleason’s contention that an individual aware of the facts reasonably might entertain a doubt whether Judge Curie would be able to be impartial in the action. (Code Civ. Proc., § 170.1, subd. (a)(6)(C).)
 
 [1]
 
 The People did not seek appellate review of respondent’s ruling. Judge Curie, however, filed a petition for writ of mandate in the Court of Appeal seeking to overturn the order disqualifying him. After first determining that a superior court judge disqualified for cause pursuant to section 170.1 properly may seek writ review of the disqualification order, the Court of Appeal issued a peremptory writ of mandate directing respondent to vacate its previous order and to enter a new order denying Gleason’s motion for disqualification.
 

 We granted review to determine whether the Court of Appeal has authority to hear a petition for writ of mandate filed by a superior court judge seeking to overturn an order requiring the judge’s disqualification for cause and, if so, whether Judge Curie properly was disqualified. As we shall explain, the exclusive means for review of a disqualification order is by a petition for writ of mandate filed by one or more of the
 
 parties
 
 to the underlying proceeding in accordance with section 170.3, subdivision (d). A superior court judge against whom a statement of disqualification has been filed is not a party to the proceeding within the meaning of this provision. Therefore, a disqualified judge may not file a petition for writ of mandate challenging the disqualification order, and the Court of Appeal lacks authority to entertain such a petition. Thus, we have no occasion to decide whether
 
 *1060
 
 Judge Curie properly was disqualified. We shall reverse the judgment of the Court of Appeal.
 

 I
 

 Pursuant to a plea agreement, Gleason pleaded guilty to one count charging the continuous sexual abuse of a child under the age of 14 years. (Pen. Code, § 288.5.) The written agreement stated that if the court denied probation, Gleason would be sentenced to no more than 12 years in state prison. If the court granted probation, Gleason would receive a stipulated sentence of 16 years in state prison, with execution of that sentence suspended subject to conditions of probation. Judge Curie accepted the plea after presiding over a hearing at which Gleason waived his rights and expressly agreed to the terms of the plea agreement.
 

 Although the probation report recommended that Gleason be granted probation subject to specified conditions, it expressed reservations regarding probation in light of several circumstances, including the nature of the offense and Gleason’s background. The report stated that these circumstances ordinarily would call for a state prison commitment, but the probation officer found that Gleason’s candor and willingness to participate in an approved treatment program indicated that he was willing to seek help and to redirect his life.
 

 At a subsequent hearing, Judge Curie stated that the disposition recommended by the probation report followed that agreed to by Gleason and the People, and that the judge’s tentative plan was to follow the recommendation of the probation officer. The prosecutor appearing at this hearing—who was not the deputy district attorney who had negotiated the plea agreement— disagreed with the recommendation of probation, however. In addition, an attorney representing the victim’s mother expressed the view that Gleason should be sentenced to state prison. Defense counsel objected to the prosecutor’s position, contending that the previously negotiated disposition included an agreement to follow the recommendation of the probation officer. Accordingly, defense counsel contended, the prosecutor violated the terms of the plea agreement by advocating a prison sentence. After reviewing the written plea agreement, however, Judge Curie concluded that the agreement reserved discretion on his part to decide whether to sentence Gleason to state prison. Judge Curie further stated that he, too, had difficulties with the probation report, and that he previously had mentioned his concerns in this regard to the probation officer’s supervisor. Judge Curie ultimately indicated that “at this point” he would not follow the recommendation to grant probation. At Gleason’s request, Judge Curie scheduled a sentencing hearing.
 

 
 *1061
 
 Before the sentencing hearing occurred, however, Gleason retained new counsel and filed a statement of disqualification for cause against Judge Curie. (§ 170.3, subd. (c)(1).) Gleason asserted that because the judge had engaged in ex parte communications with the probation officer’s supervisor, Judge Curie had exceeded his role as an impartial adjudicator and engaged in his own investigation. Because there was no record of Judge Curie’s conversation with the supervisor, Gleason contended, the judge presumably obtained knowledge and information regarding disputed evidentiary facts unknown to defense counsel and the prosecutor. For these reasons, and because Judge Curie would be a material witness concerning his conversation with the supervisor, Gleason contended that Judge Curie must be disqualified for cause pursuant to section 170.1, subdivision (a)(1) (the judge has personal knowledge of disputed evidentiary facts) and (a)(6) (a person aware of the facts reasonably might entertain a doubt whether the judge would be able to be impartial). In a supplemental declaration, Gleason’s counsel indicated that Judge Curie also demonstrated bias by stating at the hearing that he was denying probation, contrary to the recommendation of the probation report, without having considered evidence and argument from the defense on behalf of Gleason, and solely because the prosecutor and counsel for the victim’s mother opposed probation.
 

 Judge Curie filed a written verified answer to the statement of disqualification. (§ 170.3, subd. (c)(3).) The answer set forth .the following information. Upon reading the probation report, Judge Curie’s initial reaction was that Gleason should be committed to state prison. The judge had no recollection of his conversation with the probation officer’s supervisor, but any such conversation did not alter his reservations regarding the report or dispel his impression that he was the only individual with concerns regarding a grant of probation. Despite these concerns, for several reasons Judge Curie initially had planned to follow the recommendation that Gleason be granted probation: (1) the People had offered the possibility of probation, (2) both the probation report and the report regarding Gleason’s mental condition were favorable, and (3) Judge Curie was unfamiliar with treatment programs for sex offenders and therefore chose to defer to the experts. When the prosecutor also expressed reservations regarding the recommendation of probation, however, Judge Curie was surprised. The judge did not indicate at the hearing that he had made a final decision not to grant probation, but only that he tentatively favored a 12-year prison sentence.
 

 Pursuant to established procedure, the Honorable Norris M. Goodwin (a retired judge from Butte County) was assigned to sit as a judge in respondent superior court for the purpose of deciding the question of Judge Curie’s disqualification. (§ 170.3, subd. (c)(5).) Based upon the papers filed by
 
 *1062
 
 Gleason and Judge Curie (§ 170.3, subd. (c)(6)), Judge Goodwin determined that the parties, with the knowledge and consent of Judge Curie, entered into the plea agreement with the clear expectation that the court would follow the probation officer’s recommendation. Judge Goodwin further determined that Judge Curie changed his view that he would grant probation after hearing only from the prosecutor, thus giving the appearance of catering to the district attorney’s office and ignoring the plea agreement previously approved by Judge Curie. Although Judge Goodwin concluded that the conversation with the probation officer’s supervisor did not influence Judge Curie or create an appearance of bias, Judge Goodwin further concluded that “an outsider, with knowledge of the facts [and] the agreement[,] could easily believe that [J]udge Curie should have followed the [probation] report,” and that his decision not to do so conveyed the impression that Judge Curie had exhibited a bias in favor of the district attorney. Accordingly, Judge Goodwin ruled that Judge Curie was disqualified because of an appearance of bias (§ 170.1, subd. (a)(6)(C)), but not actual bias.
 

 The People did not participate in the disqualification proceeding or seek appellate review of respondent superior court’s order disqualifying Judge Curie. Purporting to act in his official capacity as a judge of respondent court, and represented by county counsel, Judge Curie filed in the Coúrt of Appeal a petition for writ of mandate to compel respondent to vacate its order and to enter a different order denying Gleason’s motion for disqualification. The Court of Appeal issued an alternative writ. Gleason filed a return and a motion to strike the petition on the ground that Judge Curie lacked standing to file the writ petition and that the appellate court had no jurisdiction to act on it.
 

 The Court of Appeal held that Judge Curie was authorized to seek writ review of respondent’s order disqualifying him from further participation in the underlying criminal proceeding. The appellate court further concluded that there was no substantial evidence supporting respondent’s threshold determination that the plea agreement required the adoption of the probation officer’s sentencing recommendation. According to the Court of Appeal, the disqualification order was based solely upon this false premise. Therefore, the court directed the issuance of a peremptory writ of mandate requiring respondent to deny Gleason’s statement of disqualification.
 

 We granted Gleason’s petition for review to determine whether the Court of Appeal properly granted the relief sought in the petition for writ of mandate.
 

 II
 

 Gleason contends that Judge Curie lacked legal authority to initiate an original writ proceeding in the Court of Appeal seeking to overturn the
 
 *1063
 
 disqualification order. Gleason relies upon section 170.3, subdivision (d) (hereafter section 170.3(d)), which states: “The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought within 10 days of notice to the parties of the decision
 
 and only by the parties to the
 
 proceeding.” (§ 170.3(d), italics added.) According to Gleason, Judge Curie is not a party to the proceeding within the meaning of this provision and therefore could not seek review of the order. Judge Curie, on the other hand, asserts that he is a party to the disqualification proceeding in the trial court and thus is one of the parties to which section 170.3(d) refers.
 

 Section 170.3(d) specifies the exclusive appellate remedy with regard to a statutory claim that the superior court erred in granting or denying a motion to disqualify a judge.
 
 (People
 
 v.
 
 Williams
 
 (1997) 16 Cal.4th 635, 652 [66 Cal.Rptr.2d 573, 941 P.2d 752];
 
 People v. Brown
 
 (1993) 6 Cal.4th 322, 334 [24 Cal.Rptr.2d 710, 862 P.2d 710];
 
 People
 
 v.
 
 Hull
 
 (1991) 1 Cal.4th 266, 275 [2 Cal.Rptr.2d 526, 820 P.2d 1036].) Because this provision states that “only ... the parties to the proceeding” may seek a writ of mandate to overturn a disqualification order, our evaluation of the respective positions of Gleason and Judge Curie depends upon the proper statutory interpretation of the phrase “parties to the proceeding.”
 

 “Our role in construing a statute is to ascertain the Legislature’s intent so as to effectuate the purpose of the law. [Citation.] In determining intent, we look first to the words of the statute, giving the language its usual, ordinary meaning. If there is no ambiguity in the language, we presume the Legislature meant what it said, and the plain meaning of the statute governs. [Citation.]”
 
 (Hunt v. Superior Court
 
 (1999) 21 Cal.4th 984, 1000 [90 Cal.Rptr.2d 236, 987 P.2d 705].) If the Legislature has provided an express definition of a term, that definition ordinarily is binding on the courts.
 
 (Adoption of Kelsey S.
 
 (1992) 1 Cal.4th 816, 826 [4 Cal.Rptr.2d 615, 823 P.2d 1216];
 
 People v. Dillon
 
 (1983) 34 Cal.3d 441, 468 [194 Cal.Rptr. 390, 668 P.2d 697].) Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.
 
 (DuBois v. Workers’ Comp. Appeals Bd.
 
 (1993) 5 Cal.4th 382, 388 [20 Cal.Rptr.2d 523, 853 P.2d 978].)
 

 We begin with an overview of the statutory scheme governing disqualification of a trial judge for cause. A judge shall be disqualified for cause if any of the grounds specified in section 170.1 is true, including if “[f]or any reason ... a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial” (§ 170.1, subd.
 
 *1064
 
 (a)(6)(C)). “If a judge who should disqualify himself or herself refuses or fails to do so, any party may file with the clerk a written verified statement objecting to the hearing or trial before the judge and setting forth the facts constituting the grounds for disqualification of the judge.” (§ 170.3, subd. (c)(1).) “[T]he judge may file a consent to disqualification ... or the judge may file a written verified answer admitting or denying any or all of the allegations contained in the party’s statement and setting forth any additional facts material or relevant to the question of disqualification.” (§ 170.3, subd. (c)(3).)
 

 If a judge refuses to recuse himself or herself, “the question of disqualification shall be heard and determined by another judge agreed upon by all the parties who have appeared or, in the event they are unable to agree within five days of notification of the judge’s answer, by a judge selected by the chairperson of the Judicial Council . . . .” (§ 170.3, subd. (c)(5).) “The judge deciding the question of disqualification may decide the question on the basis of the statement of disqualification and answer and such written arguments as the judge requests, or the judge may set the matter for hearing as promptly as practicable. If a hearing is ordered, the judge shall permit the parties and the judge alleged to be disqualified to argue the question of disqualification and shall for good cause shown hear evidence on any disputed issue of fact.” (§ 170.3, subd. (c)(6).)
 

 As established above, the statutes governing judicial disqualification contain an express provision regarding appellate review: “The determination of the question of the disqualification of a judge . . . may be reviewed only by a writ of mandate . . . sought . . .
 
 only by the parties to the
 
 proceeding.” (§ 170.3(d), italics added.)
 

 In construing the phrase “parties to the proceeding” in this provision, the Court of Appeal determined that, although a judge alleged to be disqualified is not a party to the underlying action or proceeding over which he or she is to preside, such a judge
 
 is
 
 a party to the disqualification proceeding. According to the appellate court, the proceeding to which section 170.3(d) refers is “the disqualification proceeding itself, as distinguished from the action in which the challenged judge has been barred from presiding.” Because a judge alleged to be disqualified for cause may file an answer and oppose the disqualification motion in the trial court, the Court of Appeal reasoned that it would be anomalous to deny that judge the opportunity to advance the same arguments in a writ petition in an effort to retain his or her role as the presiding judicial officer in the underlying action. Thus, the Court of Appeal held that the “parties to the proceeding,” within the meaning of section 170.3(d), are the judge alleged to be disqualified and the parties in the underlying action.
 

 
 *1065
 
 We disagree. Even assuming the word “parties” in section 170.3(d) were susceptible to an interpretation that includes an allegedly disqualified judge who files an answer to a statement of disqualification—an assumption that we shall explain is unfounded— the governing statutes compel the conclusion that such a judge is not one of “the parties
 
 to the
 
 proceeding” referred to in section 170.3(d). (Italics added.) Although the hearing to decide a disqualification motion pursuant to section 170.3 might be considered a proceeding as that term ordinarily is understood, such a hearing is not a “proceeding” as defined in section 170.5, which sets forth controlling definitions of several terms used in sections 170 through 170.5.
 

 A “proceeding” is defined as “the action, case, cause, motion, or special proceeding
 
 to be tried or heard by the judge.”
 
 (§ 170.5, subd. (f), italics
 
 [2]
 
 The only reasonable construction of this language is that “the judge” is the individual alleged to be disqualified from hearing or trying a matter that has not yet been decided; therefore, the proceeding referred to must be the
 
 underlying
 
 proceeding. (See, e.g., §§ 170.1, subd. (a) [“A judge shall be disqualified if . . . : [H] (1) The judge has personal knowledge of disputed evidentiary facts concerning the proceeding”], 170.3, subd. (b)(4) [grounds for disqualification may arise after the judge has made one or more rulings but “before the judge has completed judicial action in a proceeding”].)
 
 [3]
 
 Under the Court of Appeal’s reasoning, however, “proceeding” necessarily would refer to the disqualification motion previously decided by a different judge whose only role is to hear that motion. Such a conclusion would be inconsistent with the statutory definition specifying that the “proceeding” is a matter
 
 to be heard or tried
 
 by the judge. Thus, contrary to the Court of Appeal’s conclusion, because section 170.5, subdivision (f), establishes that the “proceeding” to which section 170.3(d) refers is the underlying proceeding, the “parties to the proceeding” within the meaning of section 170.3(d) are the litigants in the underlying action or proceeding— and not the judge alleged to be disqualified from presiding over that action or proceeding.
 

 This construction of section 170.3(d) is supported further by a consideration of the meaning of the word “party.” Although the Code of Civil Procedure does not include an express definition of this term, certain statutes provide guidance in ascertaining its meaning. For example, civil and criminal actions are defined as ordinary proceedings in a court of justice in which
 
 *1066
 
 one party prosecutes another party. (Code Civ. Proc., § 22; see also
 
 id..,
 
 § 30 [defining civil action]; Pen. Code, §§ 683, 684 [defining criminal action and parties thereto].) Similarly, the parties in a special proceeding are the plaintiff and the defendant. (Code Civ. Proc., § 1063.) Thus, the usual, ordinary meaning of the word “party” as used in the Code of Civil Procedure refers to the litigants in the underlying matter and does not include the individual judge who presides over an action or special proceeding.
 
 [4]
 

 This ordinary meaning of “party” also applies to that term as used in the statutory scheme governing disqualification for cause. (§§ 170.1-170.5.) For example, a judge shall be disqualified if, among other things, the judge served as a lawyer for “any party in the present proceeding” or the judge has a financial interest in “a party to the proceeding.” (§ 170.1, subd. (a)(2), (3).) A judge who determines himself or herself to be disqualified “may ask the parties and their attorneys whether they wish to waive the disqualification,” except where “[t]he judge has a personal bias or prejudice concerning a party.” (§ 170.3, subd. (b)(1), (2)(A).) “[A]ny party” may file a statement of disqualification against the judge. (§ 170.3, subd. (c)(1).)
 

 Furthermore, section 170.3, subdivision (c)(6), expressly distinguishes between the parties to the underlying proceeding, the judge presiding over that proceeding, and the judge deciding the question of disqualification. This provision states in part: “The judge deciding the question of disqualification . . . shall permit the parties and the judge alleged to be disqualified to argue the question of disqualification . . . .”
 
 (Ibid.)
 
 If the Legislature had intended the term “parties” to include an allegedly disqualified judge who may participate in the disqualification hearing conducted pursuant to section 170.3, there would have been no need in the foregoing passage to mention specifically that the judge alleged to be disqualified may present argument on the question. Furthermore, had the Legislature intended to permit an allegedly disqualified judge to seek a writ of mandate to overturn a disqualification order, it could have included similar language in section 170.3(d), such as: “The determination of the question of the disqualification of a judge . . . may be reviewed only by a writ of mandate . . . sought . . . only by the parties to the proceeding
 
 and/or the judge alleged to be disqualified.”
 
 The Legislature did not include such language, however, and we may not presume that the Legislature intended the word “parties” to have a meaning in
 
 *1067
 
 section 170.3(d) different from that in section 170.3, subdivision (c)(6). Moreover, as established above, elsewhere in the statutory scheme governing disqualification for cause the Legislature consistently used the term “parties” to refer to the litigants in the underlying proceeding, and the term “judge” to refer to the allegedly disqualified judge. “It is elementary that, absent indications to the contrary, ‘a word or phrase . . . accorded a particular meaning in one part or portion of the law, should be accorded the same meaning in other parts or portions of the law . . . .’ [Citation.]”
 
 (County of San Bernardino v. City of San Bernardino
 
 (1997) 15 Cal.4th 909, 926 [64 Cal.Rptr.2d 814, 938 P.2d 876].) We find no indication that the Legislature intended the term “parties” to have a special meaning in section 170.3(d) different from the meaning of that word as used elsewhere in sections 170.1 through 170.5.
 

 Therefore, the phrase “parties to the proceeding” in section 170.3(d)—construed in light of the statutory definition of the term “proceeding” as well as in the context of the rest of section 170.3 and the entire statutory scheme governing disqualification for cause—clearly refers only to the litigants in the underlying action or proceeding and does not include a disqualified judge. Because section 170.3(d) expressly states that
 
 only
 
 the parties to the proceeding may seek writ review of a disqualification order, the Legislature clearly intended that such parties possess the
 
 exclusive
 
 right to file a petition for writ of mandate pursuant to this provision. (See
 
 Guedalia
 
 v.
 
 Superior Court
 
 (1989) 211 Cal.App.3d 1156, 1159-1160 [260 Cal.Rptr. 99].)
 

 Even if we were to determine that the phrase “parties to the proceeding” in section 170.3(d) is ambiguous, thus permitting reference to extrinsic aids to ascertain its meaning, the legislative history of the statute expressly contradicts the interpretation advanced by Judge Curie and adopted by the Court of Appeal. The provision was drafted by a committee of the State Bar, which provided an analysis to the Senate Judiciary Committee. This analysis states in relevant part: “There is no present statutory provision on appellate review of disputed disqualification decisions. Exclusive review by writ of mandate is intended to provide as speedy an appellate determination as possible while still permitting evolution of standards through case-by-case adjudication.
 
 The right to seek review by mandate is limited to the parties (thereby excluding the judge). .
 
 . .” (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 598 (1983-1984 Reg. Sess.) at p. 15 [provided by Professor Preble Stolz, Chair of the State Bar Com. on the Admin, of Justice], italics added.)
 
 [5]
 
 We previously have relied upon this analysis in construing the scope of section
 
 *1068
 
 170.3(d)
 
 (People v. Hull, supra,
 
 1 Cal.4th at p. 273), and it unmistakably supports our interpretation of the statute in the present case.
 

 Judge Curie and the Court of Appeal rely upon several decisions in support of their contrary interpretation of section 170.3(d), although they acknowledge that no prior case has decided the issue presented here. In
 
 Estate of Di Grazia
 
 (1993) 13 Cal.App.4th 681 [16 Cal.Rptr.2d 621], the question was whether a trial court may impose sanctions under section 128.5 in favor of a judge alleged to be disqualified for cause pursuant to section 170.1. The Court of Appeal held that in a disqualification proceeding, the challenged judge is a “party” within the meaning of section 128.5, subdivision (a), which authorizes a trial court to order a party to pay expenses incurred by another party as a result of tactics that are frivolous or intended solely to cause delay. The court’s opinion reasons that the disqualification proceeding amounts to a separate trial of an issue distinct from those in the main action, and in which the “the judge appears as a party for all practical purposes.” (13 Cal.App.4th at p. 684.) The court also found that its interpretation furthered the purpose of section 128.5, because challenges for cause may be used improperly for the sole purpose of causing delay. (13 Cal.App.4th at p. 685.)
 

 Estate of Di Grazia
 
 is not instructive here, however, because its holding is limited to the meaning of the word “party” in section 128.5. The opinion does not analyze the term “party” as used in the disqualification statutes or consider whether the judge is one of the “parties to the proceeding” for purposes of the restricted writ review procedure specified in section 170.3(d). To the extent the decision characterizes the judge as a party to the disqualification proceeding “for all practical purposes,” that dictum goes far beyond the issue presented by the case and is not supported by any analysis of the language in the disqualification statutes or the purpose to be served by those provisions.
 

 The Court of Appeal in the present case also relied upon dicta in
 
 Ng
 
 v.
 
 Superior Court
 
 (1997) 52 Cal.App.4th 1010 [61 Cal.Rptr.2d 49]
 
 (Ng),
 
 which held that a trial judge has no standing to oppose a party’s writ petition challenging the judge’s ruling upon an issue related to the underlying litigation, if the issue does not affect the court’s operating procedures or budget. Although the petition in
 
 Ng
 
 also raised an issue regarding the disqualification of the trial judge, the judge’s return did not address that
 
 *1069
 
 issue. Nevertheless, the opinion makes the following observations: “Judges have standing to contest attempts to disqualify them. Code of Civil Procedure section 170.3, subdivision (c), contemplates an adversary proceeding in which the judge may take an active part if litigants seek to disqualify a judge for cause. The judge’s participation in the appellate process concerning such issues is therefore also appropriate. [Citations.]”
 
 (Id.
 
 at p. 1019.) These statements are accurate to the extent they indicate that section 170.3 authorizes a trial judge to participate in a disqualification proceeding in the superior court. With regard to participation in the appellate process, however, the decision in
 
 Ng
 
 did not consider whether an allegedly disqualified judge is a party within the meaning of section 170.3 and did not analyze the language of section 170.3(d) or even cite that provision. Therefore, this decision also provides no guidance in determining whether section 170.3(d) permits a disqualified judge to file a petition for writ of mandate to overturn the disqualification order.
 
 [6]
 

 The opinion in
 
 Ng, supra, 52
 
 Cal.App.4th at page 1019, cites three decisions in support of its statement that a trial judge properly may participate in the appellate process concerning disqualification issues. Judge Curie relies upon two of these decisions to bolster his interpretation of section 170.3(d). Both cases, however, were decided before the enactment of section 170.3(d) and in any event did not analyze the propriety of the trial judge’s participation in appellate proceedings.
 
 (Solberg
 
 v.
 
 Superior Court
 
 (1977) 19 Cal.3d 182, 189 [137 Cal.Rptr. 460, 561 P.2d 1148] [municipal court judge appealed from superior court judgment requiring her disqualification];
 
 Central Pac. Ry. Co.
 
 v.
 
 Superior Court
 
 (1931) 211 Cal. 706, 713, 720 [296 P. 883] [trial judges apparently filed responses to writ petition regarding their disqualification].) The third opinion cited in
 
 Ng
 
 for the proposition that a disqualified judge may participate in the appellate
 
 process—Calhoun
 
 v.
 
 Superior Court
 
 (1958) 51 Cal.2d 257 [331 P.2d 648]—contains no indication that the trial judge actively participated in the writ proceeding in the appellate court.
 

 In addition to his contentions regarding the proper interpretation of section 170.3(d), Judge Curie advances several reasons supporting his view that disqualified trial judges should be able to seek review of a disqualification order. He observes that if no party files a petition for writ of mandate to overturn the order, there is no remedy for an erroneous disqualification ruling. Permitting the trial judge to raise the issue in the Court of Appeal, Judge Curie asserts, serves the salutary purpose of furthering the accuracy
 
 *1070
 
 and integrity of the factfinding process and allowing a disqualified judge the opportunity to “clear his [or] her name.” Judge Curie maintains that this purpose is especially important because the allegedly disqualified judge has the greatest motivation to litigate the issue of his or her own impartiality and because serious disciplinary consequences may follow a determination that a judge is biased. (See
 
 In re Rasmussen
 
 (1987) 43 Cal.3d 536, 538 [236 Cal.Rptr. 152, 734 P.2d 988] [trial judge disciplined for various acts of misconduct, including refusal to disqualify himself from a proceeding in which he had communicated substantive matters to a party in the absence of counsel].) In addition, Judge Curie states, such a determination could affect a contested election in which the judge is a candidate. According to Judge Curie, denying a judge the opportunity to litigate the issue in the appellate court is fundamentally unfair.
 

 To the extent Judge Curie suggests that public policy would better be served by allowing a trial judge to seek writ review of a disqualification order, we are not free to substitute our judgment for the Legislature’s contrary determination that only the parties to the underlying proceeding should be permitted to seek appellate review of such an order. The adequacy of the appellate remedy specified by the Legislature is not before us.
 
 (People
 
 v.
 
 Hull, supra,
 
 1 Cal.4th at p. 275.) Judge Curie appears to suggest that limiting review of disqualification orders in accordance with section 170.3(d) violates certain unspecified rights of a disqualified judge and is procedurally unfair, but he does not assert that the statute is unconstitutional or should be held invalid on these grounds. In any event, although a ruling disqualifying a judge for cause under certain circumstances might provide evidence of misconduct warranting judicial discipline, such discipline could not be imposed without further proceedings before the Commission on Judicial Performance, where the judge would have a full and fair opportunity to respond to any allegations of misconduct, as well as an opportunity to petition for review in this court. (See Cal. Const., art. VI, § 18, subd. (d); Cal. Rules of Court, rule 935; Rules of Com. on Jud. Performance, rules 109-135.) Moreover, many grounds warranting disqualification for cause do not suggest that the judge necessarily has engaged in improper conduct.
 

 Statutes governing disqualification for cause are intended to ensure public confidence in the judiciary and to protect the right of the litigants to a fair and impartial adjudicator—not to safeguard an asserted right, privilege, or preference of a judge to try or hear a particular dispute. (See
 
 People
 
 v.
 
 Thomas
 
 (1972) 8 Cal.3d 518, 520 [105 Cal.Rptr. 366, 503 P.2d 1374];
 
 North Bloomfield G. M. Co. v. Keyser
 
 (1881) 58 Cal. 315, 322-323; see also
 
 Alexander
 
 v.
 
 Primerica Holdings, Inc.
 
 (3d Cir. 1993) 10 F.3d 155, 164-166 [strictly limiting participation by trial judge in writ proceeding seeking his
 
 *1071
 
 disqualification for cause under federal statute].) The parties in the underlying proceeding may choose not to contest a disqualification order for numerous reasons, including a wish to avoid unnecessary delay. When a disqualified judge unilaterally seeks review on his or her own behalf, however, the litigation is suspended pending a determination of the judge’s claims by the appellate courts. Such.delay thwarts the legislative intent underlying section 170.3(d)—to promote judicial economy and to provide “a speedy and fundamentally fair avenue to
 
 litigants
 
 who make a for-cause challenge.”
 
 (People v. Hull, supra,
 
 1 Cal.4th at p. 273, italics added.) Indeed, in the present case Judge Curie’s attempt to overturn his own disqualification has delayed the sentencing of a criminal defendant approximately two years, despite the circumstance that the defendant remains in county jail and both the prosecution and the defense are willing to have another judge impose sentence immediately. After reviewing the language and history of the statutory scheme governing disqualification for cause, we do not believe that the Legislature intended to authorize an appellate proceeding brought solely to vindicate a disqualified judge’s individual interest in overturning a finding by the superior court that grounds for disqualification exist. As we observed in a different context, “ ‘the premise under which the judiciary operates is straightforward; if no individual party finds it worth his or her while to champion the cause and seek judicial review, then review will not occur.’ [Citation].”
 
 (Municipal Court v. Superior Court
 
 (Gonzalez) (1993) 5 Cal.4th 1126, 1131 [22 Cal.Rptr.2d 504, 857 P.2d 325].)
 
 [7]
 

 In sum, the plain language of section 170.3(d) construed in light of the statutory scheme governing disqualification for cause reveals a clear intent to restrict the right to seek review of a disqualification order to the litigants in the underlying proceeding. Therefore, we conclude that section 170.3(d) does not authorize a disqualified judge to file a petition for writ of mandate seeking to overturn a disqualification order. Because this statute provides the exclusive appellate remedy with regard to disqualification of a trial judge, a judge disqualified for cause may not seek appellate review of the disqualification order, and an appellate court lacks authority to overturn such an order upon the petition of the judge. Thus, the Court of Appeal erred in granting the relief requested by Judge Curie. Because we conclude that Judge Curie is not authorized by law to seek appellate review of the order
 
 *1072
 
 disqualifying him, we do not reach, and express no opinion upon, the merits of his claim that the order is unsupported by substantial evidence.
 

 III.
 

 The judgment of the Court of Appeal is reversed, and the cause is remanded to-that court with directions to dismiss the petition for writ of mandate and to discharge the alternative writ.
 

 Mosk, J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.
 

 [1]
 

 Further undesignated statutory references are to the Code of Civil Procedure.
 

 [2]
 

 Neither the Court of Appeal nor the parties considered this definition. We solicited and received supplemental letter briefs regarding the effect, if any, of the definition upon this case.
 

 [3]
 

 The statute defines “judge” as “judges of the municipal and superior courts, and court commissioners and referees.” (§ 170.5, subd. (a).)
 

 [4]
 

 In an extraordinary writ proceeding initiated in the appellate court to review or restrain an action by the superior court, the superior court and, in rare cases, the individual judge, may be designated as the respondent. (8 Witkin, Cal. Procedure (4th ed. 1997) Extraordinary Writs, § 164, pp. 964-965.) This circumstance, however, does not alter our interpretation of the term “party” as used in the statutory scheme governing disqualification_of trial judges.
 

 [5]
 

 Senate Bill No. 598 (1983-1984 Reg. Sess.) was not enacted, but the measure subsequently was reintroduced, with modifications not relevant here, as Senate Bill No. 1633 (1983-1984
 
 *1068
 
 Reg. Sess.), which was enacted into law. The former bill included language identical to that in section 170.3(d), providing that only the parties to the proceeding may seek writ review of an order disqualifying a trial court judge. (Sen. Bill No. 598 (1983-1984 Reg. Sess.) as introduced Feb. 28, 1983, § 7, pp. 11-12.)
 

 [6]
 

 To the extent that
 
 Estate of Di Grazia, supra,
 
 13 Cal.App.4th 681, and
 
 Ng v. Superior Court, supra,
 
 52 Cal.App.4th 1010, are inconsistent with our conclusion herein, they are disapproved.
 

 [7]
 

 Counsel for both Judge Curie and Gleason acknowledged at oral argument that they are unaware of any federal or state decision endorsing a right of a disqualified judge unilaterally to initiate an appellate proceeding to overturn his or her disqualification, and our own research has disclosed no such decision. One recent California case upon which Judge Curie relied at oral argument actually supports our conclusion that a judge possesses no such right. In
 
 James G. v. Superior Court
 
 (2000) 80 Cal.App.4th 275, 279 [95 Cal.Rptr.2d 135], the Court of Appeal stated that even though a superior court in limited circumstances might be able to appear to
 
 defend
 
 itself in a writ proceeding, the court may not
 
 initiate
 
 a writ proceeding.