[No. B158416. Second Dist., Div. Six. Jan. 22, 2003.]

RANDALL LANE SETTLEMIRE, Petitioner, v.
THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY,
Respondent;
PATRICIA SETTLEMIRE, Real Party in Interest.

668

**COUNSEL**

Law Offices of Tony Marlow and Anthony J. Marlow for Petitioner.

Benton, Orr, Duval & Buckingham, Brenda L. McCormick and Mark S. Borrell for Respondent.

No appearance for Real Party in Interest.

**OPINION**

**GILBERT, P. J.**—The trial court assigns an order to show cause hearing involving a domestic restraining order and several other related issues to a commissioner for hearing. The attorney representing one of the parties will not stipulate to the commissioner and moves the court to vacate the assignment. The trial court denies the motion and assigns the case to the same commissioner "for a hearing, and findings on any matter of fact upon which information is required by the Court."

This broad and imprecise order does not state the specific facts the commissioner is to decide. The order is like sending someone to the market to get food without a shopping list. We therefore grant a writ of mandate vacating the order.

FACTS

Patricia Settlemire applied for a domestic violence restraining order against her husband, Randall Lane Settlemire (hereafter Settlemire), in the San Luis Obispo Superior Court. Commissioner Lane Stewart issued a temporary restraining order and set the matter for an order to show cause hearing to determine not just the restraining order, but temporary child custody, visitation, disposition of a community asset, the relinquishment of firearms, and the exclusion of Settlemire from his residence.

In his response, Settlemire stated that he intended to present witness testimony and would contest all the temporary orders obtained by his wife. He also filed a declaration under Code of Civil Procedure section 170.6

seeking the peremptory disqualification of Commissioner Stewart.[1] The trial court reassigned the case to Commissioner Ginger Garrett.

Settlemire objected to a commissioner deciding the case and moved to vacate the assignment. The trial court denied his motion and modified its earlier order to read: "This matter is referred . . . pursuant to Code of Civil Procedure section 259(b) for a hearing, and findings on any matter of fact upon which information is required by the Court."[2]

Settlemire petitioned this court for writ of mandate. He contended that, absent a stipulation from both parties, the commissioner lacked the authority to preside over the proceeding.

On May 8, 2002, we issued a temporary stay of proceedings. In our order we invited respondent court to reconsider its ruling in light of *In re Horton* (1991) 54 Cal.3d 82 [284 Cal.Rptr. 305, 813 P.2d 1335] [commissioner may preside over a contested matter only if both sides approve]. Respondent court rejected our invitation and "decline[d] to assign the May 10, 2002 hearing to a judge." We have issued an order to show cause and respondent court has filed its opposition to the petition.

■ Although rare, respondent court may oppose the writ petition when: "(1) the real party in interest did not appear; and (2) '[t]he issue involved directly impacted the operations and procedures of the court or potentially imposed financial obligations which would directly affect the court's operations.'" (*James G. v. Superior Court* (2000) 80 Cal.App.4th 275, 280 [95 Cal.Rptr.2d 135], citing *Ng v. Superior Court* (1997) 52 Cal.App.4th 1010, 1018-1019 [61 Cal.Rptr.2d 49]; cf. *Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1059 [103 Cal.Rptr.2d 751, 16 P.3d 166].)

DISCUSSION

### 1. *The Role of the Commissioner*

■ Court commissioners make a "significant contribution to the reduction of the judicial workload in the superior courts" (*Rooney v. Vermont*

---

[1]Unless otherwise noted, all further statutory references are to the Code of Civil Procedure.

[2]Section 259 states in part: "Subject to the supervision of the court, every court commissioner shall have power to . . . . [¶] . . . [¶] (b) Take proof and make and report findings thereon as to any matter of fact upon which information is required by the court. Any party to any contested proceeding may except to the report and the subsequent order of the court made thereon within five days after written notice of the court's action. A copy of the exceptions shall be filed and served upon opposing party or counsel within the five days. The party may argue any exceptions before the court on giving notice of motion for that purpose within 10 days from entry thereof. After a hearing before the court on the exceptions, the court may sustain, or set aside, or modify its order."

*Investment Corp.* (1973) 10 Cal.3d 351, 363 [110 Cal.Rptr. 353, 515 P.2d 297]) and "provide needed relief to the overburdened judicial system." (*Ruisi v. Thieriot* (1997) 53 Cal.App.4th 1197, 1211 [62 Cal.Rptr.2d 766]; § 639, subd. (c).) Indeed, commissioners are the backbone of most family law departments. (See Jud. Council of Cal., Admin. Off. of Cts., Rep. on Role of Subordinate Judicial Officers (adopt Cal. Rules of Court, rule 6.609) (2002) com., pp. 6-9.)

The San Luis Obispo Superior Court presently consists of 11 judges and 3 commissioners. In the fiscal year 2000-2001, there were 1,089 family law filings in that county. (Jud. Council of Cal., Admin. Off. of Cts., Rep. on Court Statistics (2002) Fiscal Year 2000-2001 Statewide Caseload Trends, Superior Courts, tables 4a.fl & 14a, pp. 46.2, 58.1.) There is no doubt that without the aid of its three commissioners, the San Luis Obispo Superior Court would be overwhelmed by its growing domestic relations caseload.

■ Article VI, section 22 of the California Constitution authorizes the Legislature to provide for the appointment of commissioners to perform subordinate judicial duties. Courts have the inherent authority to appoint commissioners. (*People v. Superior Court (Laff)* (2001) 25 Cal.4th 703, 734 [107 Cal.Rptr.2d 323, 23 P.3d 563] ["article VI, section 22, was not intended to circumscribe the inherent power of the courts to appoint subordinate judicial officers, but rather was intended to confirm the Legislature's authority to provide for such appointments"].)

The tasks of a commissioner are demanding and varied. Commissioners may: hear and decide small claims cases (Gov. Code, § 72190); conduct arraignments (Gov. Code, § 72190.1); issue bench warrants upon a defendant's failure to appear or obey a court order (Gov. Code, § 72190.2); sit as juvenile court hearing officers (Welf. & Inst. Code, §§ 247-253); decide ex parte motions for orders and writs (§ 259, subd. (a)); approve bonds and undertakings (§ 259, subd. (c)); decide preliminary matters in prescribed domestic relations matters, including custody of children, support, costs and attorney fees (§ 259, subd. (f)); and hear actions to establish paternity and enforce child and spousal support orders (§ 259, subd. (g)). These duties require no stipulation.

## 2. *The Commissioner as a Referee*

■ There are two kinds of reference hearings: general and special. In a general reference hearing, the referee, with the consent of the parties, hears and decides the entire controversy. (§ 638.) "A trial court's nonconsensual general reference constitutes an unconstitutional abdication of judicial authority." (*Murphy v. Padilla* (1996) 42 Cal.App.4th 707, 714 [49 Cal.Rptr.2d 722].)

A special reference, in contrast, is limited to specific fact determinations. (*Jovine v. FHP, Inc.* (1998) 64 Cal.App.4th 1506, 1522-1523 [76 Cal.Rptr.2d 322].) A court may appoint a referee without the consent of the parties "[w]hen a question of fact, other than upon the pleadings, arises upon motion or otherwise, in any stage of the action." (§ 639, subd. (a)(3).) Although the findings and recommendations made by a commissioner at a special reference hearing are advisory and not binding, great weight is given to the commissioner's opinion. (*In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 176 [110 Cal.Rptr.2d 111].)

Subdivision (b) of section 259 allows a judge to appoint a commissioner to preside as a fact-finding referee to "[t]ake proof . . . and report findings thereon as to [a] matter of fact upon which information is required by the court." (See also *People v. Superior Court (Laff)*, *supra*, 25 Cal.4th at p. 721.) In family law matters, a commissioner is authorized to "[h]ear and report findings and conclusions to the court for approval, rejection, or change, [in] all preliminary matters . . . ." (§ 259, subd. (f); see also Fam. Code, §§ 2032, subd. (d), 5251.)

Orders for special reference in domestic cases are commonly employed in pendente lite motions for child and spousal support, temporary restraining orders, valuation of business assets, property, liens and pensions. (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2002) ¶ 5:475, pp. 5-160 to 5-161.) Special reference hearings are also used to resolve accounting, discovery and credibility issues. (See, e.g., *In re Marriage of Petropoulos*, *supra*, 91 Cal.App.4th 161, 175-176.)

In a typical order for reference, the trial court informs the hearing officer of the specific facts it wishes to be resolved. In *Petropoulos*, the special master was ordered "to determine the parties' income for the purposes of spousal support modification motions." (*In re Marriage of Petropoulos*, *supra*, 91 Cal.App.4th at p. 167.) In *In re Estate of Beard* (1999) 71 Cal.App.4th 753, 762-763 [84 Cal.Rptr.2d 276], the special master was " 'to determine (1) whether [appellant's failure to dismiss] the [then pending] appeal breached the agreement; or (2) whether the [appellant's failure to dismiss the] appeal was necessitated by the executor's actions.' "

*In re Marriage of Galis* (1983) 149 Cal.App.3d 147 [196 Cal.Rptr. 659] is instructive. In *Galis*, the parties were requested to stipulate that a contested dissolution action be heard and determined by a commissioner sitting as a temporary judge. A party refused to stipulate to the commissioner. Over the party's objection, the judge assigned the case to the same commissioner to sit as a referee per section 639. The referee was directed to hear evidence

and make findings of fact and recommendations as to the disposition of the matter.

The commissioner made recommendations to the trial judge on issues of spousal and child support, and attorney fees. The trial judge then granted an interlocutory judgment of dissolution, which incorporated the findings and recommendations of the referee. The appellate court reversed the judgment because it concluded that reference of a contested divorce action is neither permitted by section 639 nor section 259. (*In re Marriage of Galis, supra,* 149 Cal.App.3d at p. 154.)

Similarly section 259 does not sanction the trial court's broad order here. The instant case is not "relatively modest," as stated by respondent court in its petition for rehearing. Instead, it is much like *Galis* because it is a contested hearing on multiple issues, which include permanent injunction, custody, and disposition of a community asset.

The order referred the case to Commissioner Garrett "for a hearing, and findings on any matter of fact upon which information is required by the Court." The court did not inform the commissioner of the specific factual matters it wished the commissioner to determine. Instead, the order, couched in the conclusionary language of section 259, gave the commissioner carte blanche to decide whatever facts were presented at the hearing on the order to show cause.

This demonstration of the court's resolve to manage its calendar does not mean it intends to automatically adopt the commissioner's findings. Nor does it mean the court intends the commissioner to decide legal issues. Nonetheless, the overbroad order for reference placed the commissioner in a judicial minefield. If the commissioner had decided every essential fact at the hearing on the order to show cause, she could likely trespass on the exclusive preserve of the judiciary. For example, how does the commissioner adjudicate, without proper directive, the factual basis of an application for temporary child custody or the disposition of a community asset or a restraining order without necessarily deciding the underlying legal issues?

Indeed, the absence of any straightforward directive in an order for reference invites misuse of the statutory scheme. It opens the possibility that the reference officer might undertake an assessment of credibility of the witnesses and then proceed to determine issues of law. (*De Guere v. Universal City Studios, Inc.* (1997) 56 Cal.App.4th 482, 501-502 [65 Cal.Rptr.2d 438].) The risk of an improper judicial delegation becomes greater in those cases where issues of fact and law are intertwined. (See, e.g. *In re Marriage*

*of Olson* (1993) 14 Cal.App.4th 1, 7-8 [17 Cal.Rptr.2d 480].) "The delegation to a special master of authority to determine what business expenses to allow as deductions from income for [the husband], to make tax determinations and to adjust for extraordinary tax circumstances he accepted constituted an improper delegation of judicial authority." (*Id.* at p. 8.)

It is of course true that a referee as a fact finder must necessarily make credibility findings. (*In re Marriage of Petropoulos, supra,* 91 Cal.App.4th 161.) In *Petropoulos,* the trial court in response to motions for modification of spousal support appointed a special master to determine the parties' income and assets. The court also ordered the special master to determine the parties' credibility. But, unlike respondent court here, the trial court in *Petropoulos* presided over a good portion of the trial. It had ample opportunity to independently weigh the credibility of the parties in evidentiary hearings that it conducted for over three days in which it heard testimony from the parties and the special master. (*Ibid.*) Here respondent court heard no evidence, but instead turned the hearing over to the commissioner to determine all facts.

### 3. *Some General Comments About Court Commissioners in Family Law Cases*

Family law judges have one of the most difficult and challenging of all judicial assignments. Family law cases may involve issues that cut across numerous specialties in the legal landscape, including contracts, corporations, trusts, partnerships and taxation, among others. Hearings can be battlegrounds where withering love turns to rancorous hostility. This environment takes an emotional toll on the parties, their counsel, and the trial judge.

Years ago, Justice Robert Gardner of the Fourth Appellate District wrote of the difficulties in domestic relations litigation. He notes, "[W]e begrudge the judicial resources necessary for careful and reasoned judgments in this most delicate field - the breakup of a marriage with its resulting trauma and troublesome fiscal aftermath. The courts should not begrudge the time necessary to carefully go over the wreckage of a marriage in order to effect substantial justice to all parties involved." (*In re Marriage of Brantner* (1977) 67 Cal.App.3d 416, 422 [136 Cal.Rptr. 635].)

Although not necessarily the case here, some judges view a family law assignment as a banishment to the lower circles of a judicial inferno. "[T]he assignment of a judge to family law cases is one of the most difficult and

stressful of all the responsibilities of a circuit judge." (*In re Report of Com'n of Family Cts.* (Fla. 1991) 588 So.2d 586, 591.)

Courts have drawn the same conclusion. (*In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, 38, fn. 4 [272 Cal.Rptr. 560] ["We do not fault the trial court, but we do lament that the courts are unable to give adequate time to sensitive family law matters"]; see also *In re Marriage of Hatch* (1985) 169 Cal.App.3d 1213, 1218, fn. 2 [215 Cal.Rptr. 789]; *In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1059, fn. 3 [202 Cal.Rptr. 116].) In many cases, attorneys and their clients prefer an experienced commissioner to hear their domestic matter. But for whatever reason, a party may choose not to stipulate to a commissioner. (*In re Marriage of Galis, supra,* 149 Cal.App.3d at p. 154 [while "the use of court commissioners and referees is an important tool in the economical and expeditious administration of justice[,] . . . to force an unwilling litigant to try his or her case before someone other than a judge violates clearly announced legislative policy"].)

The comments to rule 6.609 of the California Rules of Court, concerning the role of subordinate judicial officers, acknowledge the vast family law experience commissioners have, but warned that "the use of commissioners [may] create the misperception that [family law cases receive] 'second-tier' justice and that the courts do not consider them important enough to merit the attention of judges." (Jud. Council of Cal., Admin. Off. of Cts., Rep. on Role of Subordinate Judicial Officers (adopt Cal. Rules of Court, rule 6.609), *supra,* com., p. 4.)

In December of 2000 the Judicial Council created the Subordinate Judicial Officer Working Group. Its purpose was to make recommendations on the role of subordinate judicial officers. Chaired by the Honorable William R. McGuiness, Administrative Presiding Justice of the First Appellate District, the working group was composed of trial judges, attorneys, commissioners and court executive officers.

Its report recommended that, aside from some limited family support matters, "all judicial duties in family law cases be reserved to judges." (Jud. Council of Cal., Admin. Off. of Cts., Rep. of the Subordinate Judicial Officer Working Group on Subordinate Judicial Officers: Duties and Titles (2002) pp. 7, 22 (hereafter SJO Working Group Report).) This is because "[j]udicial decisions in family cases have lasting effects on the parties' homes, familial relationships, and finances." (*Id.* at p. 22.)

The SJO Working Group Report stressed that even preliminary matters in family cases should be heard by judges. "The consequences of [protective

orders] are often high—arguably higher than incarceration. People can be removed from their homes and have their children removed from their custody. Although these decisions are 'temporary,' they often have long-term consequences." (SJO Working Group Rep., *supra*, at p. 23.)

## CONCLUSION

■ [A] number of decisions have stated that the power of a trial court to compel the parties to submit an aspect of a judicial proceeding to a subordinate judicial officer is derived from statute, and only those issues particularly described in the statute may be referred without the consent of the parties." (*People v. Superior Court (Laff)*, *supra*, 25 Cal.4th at p. 734.) ■ The trial court's broad order for reference of a case with multiple factual issues was an improper delegation of judicial duties. (*In re Marriage of Olson*, *supra*, 14 Cal.App.4th at p. 8.)

Let a writ of mandate issue directing respondent superior court to vacate its order sending the matter for a reference hearing and to enter a new order that specifies the factual issues to be resolved.

The order to show cause and the stay, having served their purposes, are dissolved. The parties are to bear their own costs.

Yegan, J., and Coffee, J., concurred.