BILL LOCKYER Attorney General SUSAN DUNCAN LEE Deputy Attorney General
THE HONORABLE BOB MARGETT, MEMBER OF THE STATE SENATE, has requested an opinion on the following question:
May cottontail and brush rabbits that are eating landscaping, ornamental plants, or gardens be trapped or killed?
 CONCLUSION
Cottontail and brush rabbits that are eating landscaping, ornamental plants, or gardens may be trapped or killed if it can be established that they are materially harming such plants.
 ANALYSIS
The eating habits of cottontail and brush rabbits have been described by the University of California, Statewide Integrated Pest Management Program, as follows:
"Rabbits are a form of wildlife enjoyed by many people but they can be very destructive to gardens and landscaped areas. Eight species of rabbits are found in California. Three of these species, the black-tailed hare or jackrabbit (Lepus californicus), the desert cottontail (Sylvilagus audubonii), and the brush rabbit (S. bachmani) are widespread and cause the majority of problems. . . .
". . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"The food habits of cottontails and brush rabbits vary with the location and time of year. Cottontails feed seasonally on grasses, sedges, herbaceous plants, willows, oaks, blackberries, and wild roses. Brush rabbits prefer clover and also feed on the stems and berries of woody plants such as blackberry.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"Rabbits can be very destructive in gardens and landscaped places. This is particularly true where wild or uncultivated lands border residential zones, parks, greenbelts, or other landscaped places. Open lands such as uncultivated, wild areas provide resting and hiding cover during the day within easy travel distances to prime, irrigated food sources.
"The cosmopolitan tastes of rabbits are well illustrated by the following partial list of crops and plants they damage: vegetables (beans, beet, broccoli, carrot, lettuce, peas); tree and berry crops (almond, apple, blackberry, cherry, citrus, pistachio, plum, raspberry, strawberry); herbs (cilantro, parsley); and ornamental plantings (various flowers, shrubs, trees, and turf). Rabbits also gnaw and cut plastic irrigation lines."
(http://www.ipm.ucdavis.edu/PMG/PESTNOTES/pn7447.html.)
We are asked whether cottontail and brush rabbits that are eating landscaping,[1] ornamental plants, or gardens may be trapped or killed.[2] We conclude that they may if it can be established that they are causing material harm to such plants.
Resolution of the issue presented calls for an interpretation of three statutes contained in two different codes. The Fish and Game Code helps further "the policy of the state to encourage the conservation and maintenance of wildlife resources" (Fish G. Code, §1801), and in so doing, has provisions that relate to both animal and plant life (e.g., Fish G. Code, §§1906-1908). The Food and Agricultural Code has "the purposes of promoting and protecting the agricultural industry of the state" (Food Agr. Code, § 3), and in so doing, has provisions relating to both plant and animal life (e.g., Food Agr. Code, § 403).
In analyzing these statutory provisions, we apply well established rules of statutory construction. Our main objective "is to ascertain the Legislature's intent so as to effectuate the purpose of the law." (Huntv. Superior Court (1999) 21 Cal.4th 984, 1000.) In determining legislative intent, "[t]he words of the statute are the starting point." (Wilcox v. Birtwhistle (1999) 21 Cal.4th 973, 977.) "In analyzing statutory language, we seek to give meaning to every word and phrase in the statute. . . ." (Harris v. Capital Growth Investors XIV (1991)52 Cal.3d 1142, 1559; accord Cooley v. Superior Court (2002)29 Cal.4th 228, 249.) "Words used in a statute . . . should be given the meaning they bear in ordinary use." (Lungren v. Deukmejian (1988)45 Cal.3d 727, 735.) "If the Legislature has provided an express definition of a term, that definition ordinarily is binding on the courts. [Citations.]" (Curle v. Superior Court (2001) 24 Cal.4th 1057,1063.) "It is elementary that, absent indications to the contrary, `a word or phrase . . . accorded a particular meaning in one part or portion of the law, should be accorded the same meaning in other parts or portions of the law. . . .' [Citations.]" (County of San Bernardino v.City of San Bernardino (1997) 15 Cal.4th 909, 926.) Statutes relating to the same subject matter must be read together and harmonized if possible. (Brown v. West Covina Toyota (1994) 26 Cal.4th 555, 565-566.) "Where two codes are to be construed, they must be regarded as blending into each other and forming a single statute. [Citations.]" (Meninga v.Raley's Inc. (1989) 216 Cal.App.3d 79, 90; accord, Austin v. Board ofRetirement (1989) 209 Cal.App.3d 1528, 1532.)
Preliminarily, we note that cottontail and brush rabbits are not threatened or endangered species (Fish G. Code, §2070; Cal. Code Regs., tit. 14, § 14:670.5); they may be hunted as "game mammals" (Fish G. Code, §3950, subd. (a)) and "resident small game" (Cal. Code Regs., tit. 14, § 14:257) subject to regulations adopted by the Fish and Game Commission (see, e.g., Cal. Code Regs., tit. 14, §§ 14:257.5,14:308, 14:310, 14:311). We are not concerned in this opinion, however, with the hunting of game mammals but rather with whether, pursuant to specific statutory authorization, cottontail and brush rabbits may be trapped or killed due solely to their eating landscaping, ornamental plants, or gardens.
The three statutes requiring our examination are Fish and Game Code sections 3005 and 4186 and Food and Agricultural Code section 24.5 Fish and Game Code section 3005 (hereafter "section 3005") provides:
"(a) It is unlawful to take birds or mammals with any net, pound, cage, trap, set line or wire, or poisonous substance, or to possess birds or mammals so taken, whether taken within or without this state, except as provided in this code. . . .
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"(d) This section does not apply to the lawful taking of fur-bearing mammals, nongame birds, nongame mammals, or mammals found to be injuring crops or property, to the taking of birds or mammals under depredation permits, to taking by employees of the department acting in an official capacity, or to taking in accordance with the conditions of a scientific or propagation permit by the holder of that permit."
Fish and Game Code section 4186 (hereafter "section 4186") states:
"Nothing in this code prohibits the owner or tenant of land, or any person authorized in writing by such owner or tenant, from taking cottontail or brush rabbits during any time of the year when damage to crops or forage is being experienced on such land. Any person other than the owner or tenant of such land shall have in possession when transporting rabbits from such property written authority from the owner or tenant of land where such rabbits were taken. Rabbits taken under the provision of this code may not be sold."
Finally, Food and Agricultural Code section 24.5
(hereafter "section 24.5") provides:
"Inasmuch as plants growing in native stands or planted for ornamental purposes contribute to the environmental and public health and welfare needs of the people of the state, the Legislature hereby finds and declares that such plants shall be considered as a part of the agricultural industry for the purpose of any law that provides for the protection of the agricultural industry from pests."
Looking first at the language of section 3005, we find that cottontail and brush rabbits ("mammals") cannot be trapped or poisoned "except as provided in this code" (§ 3005, subd. (a)); however, separate authorization provided in the code need not be found if the trapping or poisoning is "lawful" and the cottontail and brush rabbits are "found to be injuring crops or property" (§3005, subd. (d)). The requirement of a "lawful" taking would preclude trapping or poisoning in violation of any applicable prohibition. For example, a depredation permit is required to take any deer, bear, elk, wild pig, gray squirrel, beaver, or mountain lion that is causing crop or property damage. (§§ 4181-4185; Cal. Code Regs., tit. 14, §§14:400-14:402; see also § 3003.1 [steel-jawed leghold trap prohibited for general use].)
As for the term "injuring," it ordinarily means "to harm" or "inflict material damage." Injury causes a detrimental loss of value and usefulness; it causes material destruction or impairment. (Webster's,supra, at p. 1164.) Significantly, then, the crops or property must be shown to be materially harmed. For example, simply eating grass or flowers, without more, would be insufficient to cause the requisite degree of harm for application of the statute. The individual circumstances must be examined in each case.
With respect to section 3005's reference to "crops," the term connotes plants that are "grown and harvested extensively for profit or subsistence." (Webster's, supra, at p. 540.) Or, as the Legislature has defined the term in a related context: "a plant or animal, or a product derived from a plant or animal, that can be grown and harvested for profit or for the subsistence of humans or animals." (Food Agr. Code, § 5011) For example, if the gardens in question are vegetable gardens, they could possibly qualify as containing "crops" for purposes of section 3005. However, that determination need not be made here, since landscaping, ornamental plants, and gardens must be considered "property" as that term is ordinarily defined. (Webster's, supra, at p. 1818.)
We reject the suggestion that subdivision (d) of section3005 requires some other statute to authorize the trapping or poisoning of mammals "found to be injuring crops or property." There would be no need for subdivision (d) if that were the case, since subdivision (a) already requires some other provision in the Fish and Game Code to avoid its prohibition against trapping or poisoning birds or mammals. Reading subdivision (d) of section 3005
as a whole, the requirement of "found to be injuring crops or property" provides the same requisite authority as a depredation permit, a scientific permit, a propagation permit, or when a Department of Fish and Game employee is acting in an official capacity. No other statutory authorization for using traps or poison is necessary in any of these circumstances. The legislative history of section 3005
supports this construction of the statute. (See, e.g., Stats. 1957, ch. 456, § 3005; Stats. 1953, ch. 1710, § 1; 22 Ops.Cal.Atty.Gen. 206, 208-209 (1953).)
Turning to section 4186, we find that cottontail and brush rabbits may be trapped or killed ("taking") at any time when they are causing "damage to crops or forage." We believe the term "damage," as used in section 4186, connotes the same degree of harm as the term "injuring" in section 3005, subdivision (d). "Damage" commonly means "loss due to injury" or "injury or harm to . . . property." (Webster's, supra, at p. 571.) Accordingly, the crops or forage must be materially harmed for purposes of applying section4186.
As previously noted, the term "crops" may possibly include vegetable gardens. The term "forage" has two ordinary meanings: (1) "vegetable food (as hay, grain) for domestic animals" and (2) "food that wild or domestic animals take for themselves." (Webster's, supra, at p. 886.) The first would exclude landscaping, ornamental plants, and gardens, while the second would include such plants. In a related context, the Legislature has defined "forage" as "food for domestic or other wild animals that is taken by browsing or grazing, or food that wild or domestic animals take for themselves." (Food Agr. Code, § 5012) While we have no reason to believe the Legislature meant something different in section 4186 than its definition contained in Food and Agricultural Code section 5012 (see Stats. 1953, ch. 164, § 1), we need not decide this issue, since the Legislature has qualified section 4186, as well as section3005, by enacting section 24.5.
Section 24.5 declares that "plants growing in native stands or planted for ornamental purposes . . . shall be considered as a part of the agricultural industry for the purpose of any law that provides for the protection of the agricultural industry from pests." Both subdivision (d) of section 3005and section4186 provide protection from pests for the agricultural industry of the state. As we have seen, each statute provides protection for "crops," and hence the agricultural industry. Each requires "injuring" or "damage" to the crops, which we have construed to mean material harm to such plants.
In this context, then, cottontail and brush rabbits causing material harm to crops must be considered "pests" for purposes of section24.5. The term "pest" is ordinarily defined as "a plant or animal detrimental to man or to his interests." (Webster's, supra, at p. 1689.) This definition is supported by the Legislature's definition of "pest" in Food and Agricultural Code section 5006, a related provision, as including any form of animal life "that is or is liable to be, dangerous or detrimental to the agricultural industry of the state." Cottontail and brush rabbits would also come under the Legislature's definition of the term "pest" found in Food and Agricultural Code section 12754.5 as including a rodent (Food Agr. Code, § 12757 [" `Rodent' means . . . all rabbits and hares"]) "that is, or is liable to become, dangerous or detrimental to the agricultural or nonagricultural environment of the state." While we note that Dutch elm disease was the particular pest that prompted the enactment of section 24.5 in 1975 (see Stats. 1975, ch. 1000, § 2), we have found nothing in the legislative history of the statute to suggest that it was intended to apply exclusively to Dutch elm disease.
In so construing sections 3005, 4186, and 24.5, we harmonize their provisions and give significance to each according to the ordinary meanings of the terms used.[3] We conclude that cottontail and brush rabbits that are eating landscaping, ornamental plants, or gardens may be trapped or killed if it can be established that they are materially harming such plants.
[1] We view the term "landscaping" as referring to ornamental plants placed in a particular way for aesthetic or decorative purposes. (See Webster's 3d New Internat. Dict. (2002) p. 1269.)
[2] The technical term is "take," which is defined as "hunt, pursue, catch, capture, or kill . . . ." (Fish G. Code, §86.)
[3] We also note that a landowner may "drive or herd game mammals for the purpose of preventing damage by such mammals to private property" (Fish G. Code, § 3003.5, subd. (a)), a county agricultural commission may declare any property infested with any pest to be a public nuisance and require the property owner to abate the nuisance, and if it is not abated, "shall abate the nuisance by eradicating, controlling, or destroying the pest" (Food Agr. Code, § 5403; see Food Agr. Code, §§2281, 5101, 5401,5421, 5762) a county board of supervisors may provide for the control or destruction of . . . wild animals . . . injurious to fruit, fruit trees, vines, or vegetable or plant life" (Gov. Code, § 25842), and the Department of Food and Agriculture is directed to "prevent the introduction and spread of . . . animal pests" (Food Agr. Code, § 403), among related statutory provisions.