Filed 7/12/21  Steinbruner v. Soquel Creek Water District CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| REBECCA STEINBRUNER, | H047733 |
| Plaintiff and Appellant, | (Santa Cruz County Super. Ct. No. 19CV00181) |
| v. | |
| SOQUEL CREEK WATER DISTRICT, | |
| Defendant and Respondent. | |

## I.   INTRODUCTION

This CEQA[1] action arises from the proposal of respondent Soquel Creek Water District (the District) for the Pure Water Soquel:  Groundwater Replenishment and Seawater Intrusion Prevention project (Pure Water Soquel project), which has the objective of supplementing the natural recharge of the groundwater basin with purified water obtained by treating secondary effluent from the Santa Cruz Wastewater Treatment Facility.  After preparing an environmental impact report (EIR) pursuant to CEQA for the proposed Pure Water Soquel project and holding a hearing, the District's Board of Directors approved the Pure Water Soquel project.

---

[1] California Environmental Quality Act, Public Resources Code section 21000, et seq.

Plaintiff Rebecca Steinbruner, a self-represented litigant appearing in the public interest,[2] challenged the District's approval of the Pure Water Soquel project by filing a petition for writ of mandate alleging violations of CEQA's requirements for environmental review. After a hearing, the trial court denied the petition, and the judgment denying the first amended petition for writ of mandate was filed on November 26, 2019.

In her appeal, Steinbruner contends that the trial court erred in denying the amended petition for writ of mandate because (1) the EIR's analysis of growth impacts is inadequate; (2) the EIR's analysis of impacts on groundwater quality is inadequate: and (3) the EIR's analysis of project alternatives is inadequate.

Steinbruner also contends that the trial court erred in denying several of her pretrial ex parte applications and motions, including (1) the order denying her motion to vacate a case management order; (2) the order denying her motion for a change of venue; (3) the order denying her motion for leave to file a second amended writ petition; (4) the order denying her motion to continue the merits hearing; and (5) the order denying her request for judicial notice.

For the reasons stated below, we find no merit in Steinbruner's contentions on appeal, and we will affirm the judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Proposed Project and Environmental Impact Report*

The District relies upon groundwater for 100 percent of its water supply. In 2014 the District declared a critical groundwater overdraft emergency. The District has also

---

[2] No issue has been raised with respect to Steinbruner's standing. We note that " ' "where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the [petitioner] need not show that he [or she] has any legal or special interest in the result, since it is sufficient that he [or she] is interested as a citizen in having the laws executed and the duty in question enforced." ' [Citation.]" (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 166.)

detected seawater intrusion in its groundwater supply aquifers. To increase the sustainability of the water supply, the District proposed the Pure Water Soquel project, with the objective of supplementing the natural recharge of the groundwater basin with purified water obtained by treating secondary effluent from the Santa Cruz Wastewater Treatment Facility.

In 2018 the District circulated the draft EIR (DEIR) analyzing the environmental impacts of the Pure Water Soquel project for public review. The DEIR stated that the project objectives were to (1) "Replenish the local groundwater basin to prevent further seawater intrusion and develop a sustainable water supply in a timely manner that meets the District's supply objectives and the State's mandate under the SGMA [Sustainable Groundwater Management Act]"; (2) "Develop an affordable, reliable, and drought-resistant supplemental water source that contributes to the diversification of the District's water supply portfolio and enhances resiliency"; (3) "Continue to provide District customers with a high-quality and safe water supply"; and (4) "Provide additional environmental benefits, such as to surface and marine waters."

The project description was summarized in the DEIR as follows: "This [EIR] considers an advanced purification system capable of treating secondary effluent to meet State Water Resources Control Board (SWRCB) Division of Drinking Water (DDW) recycled water standards for groundwater replenishment via recharge. The Project components under consideration include: tertiary and advanced water purification facilities; pump stations and pipelines for the conveyance of source water, purified water, and brine; and recharge and monitoring wells. The Project also includes the potential use of purified water for landscape irrigation application and redistribution of groundwater pumping from District production wells."

The DEIR identified three project alternatives, including the no project alternative, the reduced project with surface water purchase alternative, and the local

3

seawater/brackish desalination alternative. The DEIR determined that the proposed project was the environmentally superior alternative.

After receiving public comments on the DEIR, the District released the final EIR (FEIR) in December 2018. The FEIR consists of the DEIR, the public comments, and the responses to comments. At a public meeting held on December 18, 2018, the District's Board of Directors adopted resolution No. 18-30 certifying the FEIR. The District's Board of Directors also adopted resolution No. 18-31 approving the Pure Water Soquel project "as described in the Final EIR, consisting of these components: water treatment facilities at one or two sites, a pipeline alignment for secondary or tertiary effluent, a pipeline alignment for purified water, a pipeline alignment for brine concentrate, and recharge wells and appurtenances at up to three (3) sites, from the components evaluated in the Final EIR."

## B.    *Writ Proceedings*

### 1.    *Petition for Writ of Mandate*

On January 17, 2019, Steinbruner filed a petition for a writ of mandate setting aside the District's approval of the Pure Water Soquel project. The petition named the District and Ron Duncan, the District's general manager, as respondents, and Santa Cruz County, the City of Santa Cruz, the Santa Cruz Wastewater Treatment Facility, the Santa Cruz Mid-County Groundwater Agency, and Twin Lakes Baptist Church as real parties in interest. None of the real parties in interest have appeared in the case.[3]

On January 31, 2019, Steinbruner filed an amended petition for writ of mandate. In her amended petition, Steinbruner raised the following claims of CEQA violations: (1) the EIR's analysis of the impact on groundwater quality is inadequate; (2) the EIR did not analyze a reasonable range of alternatives; (3) the EIR failed to adequately respond to

---

[3] Notices of non-interest in the proceeding were filed by Santa Cruz Mid-County Groundwater Agency, the County of Santa Cruz, and the Santa Cruz County Regional Transportation Commission.

4

public comments; and (4) the District's approval of the project failed to comply with CEQA in several respects, including ignoring new information, failing to accurately represent the view of other agencies, prematurely entering into agreements before the CEQA process was complete, and failing to provide the public with adequate time to review the DEIR.

### 2. *Pretrial Ex Parte Applications and Motions*

After filing the amended writ petition, Steinbruner filed numerous pretrial applications and motions. We will briefly summarize the applications, motions, and orders that are pertinent to this appeal.

On February 20, 2019, Steinbruner filed her first ex parte application for a preliminary injunction, temporary restraining order, and stay of construction activities relating to the Pure Water Soquel project, which the District opposed. On the same day, Judge John Gallagher denied the application for a temporary restraining order without prejudice to seeking injunctive relief. It is undisputed that during the February 20, 2019 hearing on Steinbruner's first ex parte application, Judge Gallagher disclosed to the parties that the District was his client when he was in private practice, and neither party objected to Judge Gallagher presiding.

Steinbruner filed a second ex parte application on March 5, 2019, seeking a temporary stay of various activities by the District that she asserted were furthering the Pure Water Soquel project. The District opposed the application and on March 5, 2019, Judge Gallagher denied the application without prejudice to a hearing on Steinbruner's application for a preliminary injunction. The record reflects that no hearing was ever held on the application for a preliminary injunction.

On May 7, 2019, Steinbruner filed a third ex parte application for a temporary stay, this time seeking a stay of the District's purchase of real property that she believed was necessary to the Pure Water Soquel project. The District opposed the third ex parte application, and it was denied by Judge Paul P. Burdick on May 7, 2019.

5

On May 31, 2019, Steinbruner filed a peremptory challenge to Judge Burdick under Code of Civil Procedure section 170.6[4] on the ground that the judge was prejudiced against her. By order dated June 12, 2019, Judge Burdick accepted the challenge. The matter was then reassigned to Judge Gallagher. After holding a case management conference, Judge Gallagher issued a June 27, 2019 order setting administrative record deadlines, briefing deadlines, and a hearing schedule (hereafter, case management order).

On July 12, 2019, Steinbruner filed a "motion to disqualify" Judge Gallagher on the grounds that he was biased against her and she had learned that in 2017 the judge had recused himself in a similar case involving the District. Also on July 12, 2019, Steinbruner filed a motion to vacate the June 27, 2019 case management order on the grounds that Judge Gallagher was biased against her and had therefore set a compressed briefing and administrative record schedule that denied her requests for longer page limits and caused her hardship.

Steinbruner filed a second motion to disqualify Judge Gallagher on July 26, 2019. Steinbruner acknowledges in her opening brief that the trial court informed her that she had failed to perfect service on Judge Gallagher and therefore the judge did not respond to her disqualification motions. Consequently, there was no ruling on Steinbruner's attempts to disqualify Judge Gallagher. During the hearing held on August 9, 2019, Judge Gallagher adopted his tentative ruling denying Steinbruner's motion to vacate the case management order and directed defense counsel to submit an order for signature.

Also on August 9, 2019, Judge Gallagher issued an order voluntarily recusing himself. The order states in its entirety: "I recuse myself from the case, now that a hearing on [Steinbruner's] Writ of Mandate has been confirmed, to avoid any appearance of impropriety if I were to make substantive decisions regarding the outcome of the case. I have been a Superior Court Judge for almost 9 years. Prior to that time, when I was a

---

[4] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

6

civil attorney, my law partner, Robert Bosso was District Counsel for Soquel Creek Water District, the primary respondent in this matter. Over the course of 23 years working with Mr. Bosso, I represented the Soquel Creek Water District in occasional litigation as trial counsel. On 1 or 2 occasions the litigation was related to CEQA compliance issues. I estimate that the most recent CEQA related litigation where I represented the Soquel Creek Water District occurred 15-20 years ago. Out of an abundance of caution, I now recuse myself. Previously, at the first court appearance in this case, I disclosed to [Steinbruner] my prior relationship with Mr. Bosso and the Soquel Creek Water District. Having heard my disclosure, [Steinbruner] expressed no objection to my hearing the case." On August 16, 2019, the written order denying Steinbruner's motion to vacate the case management order was filed with Judge Gallagher's signature.

Following Judge Gallagher's recusal, the matter was assigned to Judge Timothy J. Schmal. Steinbruner filed additional ex parte applications and motions that were heard by Judge Schmal, beginning with her August 20, 2019 ex parte application seeking reconsideration of the order denying her motion to vacate the case management order. Judge Schmal denied the ex parte application in his September 3, 2019 order, which also imposed and stayed monetary sanctions of $1,500 and set a briefing schedule.

Thereafter, on September 30, 2019, Steinbruner filed a motion for a change of venue transferring the matter to Sacramento County, arguing that Judge Schmal was not a qualified CEQA judge and would not be impartial, which the District opposed. In the November 7, 2019 order denying the motion to change venue, Judge Schmal ruled that the motion was untimely, a change of venue would result in a prejudicial delay to the District, and Steinbruner had failed to make the requisite evidentiary showing that transfer was justified.

While her motion to change venue was pending, on October 11, 2019, Steinbruner filed a motion for leave to file a second amended petition for writ of mandate. She

7

argued that amendment was necessary to correct defects and mistakes in the pleading, and also to add new real parties in interest, a new cause of action, exhibit material she was unable to add to the first amended petition, and newly discovered material relevant to the project's impact on groundwater. The District opposed the motion for leave to amend and on November 12, 2019, Judge Schmal denied the motion on the grounds that Steinbruner was dilatory in seeking amendment and further delay would cause severe prejudice to the District as the respondent in a CEQA case. Judge Schmal also found that Steinbruner's failure to timely seek amendment was not excused because she was self-represented.

While her motion to change venue was pending, on October 17, 2019, Steinbruner brought an ex parte application to continue the November 8, 2019 hearing on the merits of the petition for writ of mandate. Steinbruner argued that the hearing should be continued to allow the court to rule on her motion for leave to file a second amended complaint; she needed more time to prepare for the merits hearing; and she anticipated receiving new information from the State Department of Water Resources that was critical to the allegations in her second amended petition regarding the nonexistence of a groundwater overdraft.

Judge Schmal denied the ex parte application for a continuance of the merits hearing in a November 12, 2019 order, finding that the interests of justice would not be served by a continuance in light of other Department of Water Resources documents indicating the existence of the groundwater overdraft, the prejudice to the District, the preferential setting of CEQA actions, and the denial of the motion for leave to file a second amended writ petition.

On November 5, 2019, three days before the November 8, 2019 hearing on the merits, Steinbruner filed a request for judicial notice of numerous documents pertaining to water resources and the trial court's records in this matter. The trial court denied the request for judicial notice in a ruling from the bench on November 8, 2019, on the

grounds, as stated in the District's opposition, that the request for judicial notice was untimely, improperly sought notice of documents outside the administrative record or already part of the administrative record, and improperly sought judicial notice of the truth of the contents of documents.

### 3. *Hearing on the Merits and Judgment*

The hearing on the amended petition for writ of mandate was held on November 8, 2019. In the November 18, 2019 order denying the petition, Judge Schmal addressed the CEQA issues that Steinbruner had raised or attempted to raise in her opening brief challenging the District's approval of the Pure Water Soquel project. These issues included improper piecemealing of a pilot well project and procedural failures under CEQA, which Judge Schmal ruled were time-barred and barred by failure to exhaust administrative remedies, respectively.

Steinbruner also argued in her opening brief that the EIR was inadequate with respect to projective objectives, analysis of alternatives, rejection of a water-transfer-only alternative, failure to consider recycled water in the alternatives, response to public comments, analysis of impact on groundwater quality, and analysis of cumulative growth impacts. Judge Schmal found no merit in these CEQA arguments on the ground that Steinbruner had failed to support her arguments that the EIR was inadequate with substantial evidence.

The judgment denying the first amended petition for writ of mandate was entered on November 26, 2019. Steinbruner filed a notice of appeal on December 20, 2019, in the Appellate Division, Santa Cruz County Superior Court, which ordered this matter transferred to this court. This court ordered that the appeal was properly filed in this court as an appeal from an unlimited jurisdiction judgment in a special proceeding under CEQA.

## III.  DISCUSSION

### A.  *General Rules of Appellate Review*

We will begin by providing an overview of the pertinent general rules that govern our appellate review and also place certain burdens on the appellant.

In conducting our appellate review, we presume that a judgment or order of a lower court is correct.  " 'All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; see also *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

The appellant must present argument supported by relevant legal authority as to each issue raised on appeal.  " '[E]very brief should contain a legal argument with citation of authorities on the points made.  If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.  [Citations.]' [Citations.] This principle is especially true when an appellant makes a general assertion, unsupported by specific argument, regarding insufficiency of evidence.  [Citation.]" (*People v. Stanley* (1995) 10 Cal.4th 764, 793.)  Thus, as this court has previously stated, "[t]he absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived.  ([Citation]; see also Cal. Rules of Court, rule 8.204(a)(1)(B).)" (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 (*Marriage of Falcone*).)

Additionally, "[a]n appellant must '[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears.' (Cal. Rules of Court, rule 8.204(a)(1)(C).)  ' "The appellate court is not required to search the record on its own seeking error." [Citation.]' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 156.)  Where a party fails to support an argument with the necessary citations to the record, the argument will be deemed to be waived.  (*Ibid.*)

Steinbruner is not exempt from compliance with these general rules of appellate procedure because she is representing herself on appeal. "Under the law, a party may choose to act as his or her own attorney. [Citations.] '[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys. [Citation.]' [Citation]." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247; see also *Severson & Werson, P.C. v. Sepehry-Fard* (2019) 37 Cal.App.5th 938, 952 ["self-represented parties must follow correct rules of procedure and failure to do so can result in waiver of challenges on appeal"].)

Accordingly, a self-represented litigant is not entitled to lenient treatment. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985 (*Rappleyea*.) "A doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation." (*Id.* at p. 985.)

## B. *Pretrial Orders*

### 1. *Order Denying Motion to Vacate Case Management Order*

We understand Steinbruner to contend that Judge Gallagher's August 16, 2019 order denying her motion to vacate the case management order is void because Judge Gallagher was biased against her, as demonstrated by the compressed briefing and administrative record schedule that caused her hardship, and therefore Judge Gallagher should have been disqualified or recused himself before issuing the order.

The District responds that an order denying a motion to vacate a case management order is not an appealable order. Further, the District argues that Steinbruner's attempt to seek review on the grounds of judicial bias is time-barred due to her failure to comply with the Code of Civil Procedure's statutory scheme for disqualification of judges and appellate review.

We agree that to the extent that Steinbruner contends the order denying her motion to vacate the case management order is void because Judge Gallagher should have been

11

disqualified for the reasons set forth in the statutory scheme for the disqualification of judges, that issue is not cognizable on appeal. The statutory scheme includes a peremptory challenge under section 170.6, which " 'permits a party to obtain the disqualification of a judge for prejudice, upon a sworn statement, without being required to establish it as a fact to the satisfaction of a judicial body.' [Citation.] Thus, '[w]here a disqualification motion is timely filed and in proper form, the trial court is bound to accept it without further inquiry.' [Citation.]" (*Zilog, Inc. v. Superior Court* (2001) 86 Cal.App.4th 1309, 1315.)

The statutory scheme also provides for a challenge for cause: "A judge shall be disqualified for cause if any of the grounds specified in section 170.1 is true, including if '[f]or any reason . . . a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial' (§ 170.1, subd. (a)(6)(C)) [now § 170.1, subd. (a)(6)(A)(iii)]). 'If a judge who should disqualify himself or herself refuses or fails to do so, any party may file with the clerk a written verified statement objecting to the hearing or trial before the judge and setting forth the facts constituting the grounds for disqualification of the judge.' (§ 170.3, subd. (c)(1).)" (*Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063-1064 (*Curle*).)

Section 170.3, subdivision (d) provides in part that "[t]he determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought only by the parties to the proceeding. The petition for the writ shall be filed and served within 10 days after service of written notice of entry of the court's order determining the question of disqualification." (See *Curle*, *supra*, 24 Cal.4th at p. 1063.)

In the present case, the record reflects that Steinbruner did not succeed in her attempts to file and serve a statement of disqualification against Judge Gallagher. Consequently, to the extent Steinbruner sought disqualification on the grounds of prejudice or lack of impartiality as set forth in the statutory scheme for the

disqualification of judges at sections 170.6 and § 170.1, subd. (a)(6)(A)(iii), the issue of statutory disqualification may not be reviewed on appeal because Steinbruner did not file a petition for writ of mandate seeking review under section 170.3, subdivision (d).

To the extent that Steinbruner contends that Judge Gallagher's bias against her constitutes a denial of due process that may be corrected on appeal, we are also not convinced. The California Supreme Court has instructed that "[a]bsent a financial interest, adjudicators are presumed impartial. [Citations.] To show nonfinancial bias sufficient to violate due process, a party must demonstrate actual bias or circumstances ' "in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." ' [Citations.] The test is an objective one. [Citations.] While the 'degree or kind of interest . . . sufficient to disqualify a judge from sitting "cannot be defined with precision" ' [citation], due process violations generally are confined to 'the exceptional case presenting extreme facts' [Citation.]" (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 219 (*Today's Fresh Start*).) Our Supreme Court has also instructed that "a judge's 'rulings against a party—even when erroneous—do not establish a charge of judicial bias, especially when they are subject to review.' [Citation.]" (*People v. Armstrong* (2019) 6 Cal.5th 735, 798.)

Since Steinbruner contends that Judge Gallagher's actual bias was demonstrated by his ruling against her wishes in issuing the case management order, we find no merit in her claim her motion to vacate the case management order should be granted due to actual bias. The fact that a trial court has issued numerous rulings adverse to party "does not indicate an appearance of bias, much less demonstrate actual bias. [Citation.]" (*Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 674.) Accordingly, we determine that Steinbruner has failed to show a due process violation on the grounds that this is " 'the exceptional case presenting extreme facts' " demonstrating

13

actual bias on the part of Judge Gallagher. (*Today's Fresh Start*, *supra*, 57 Cal.4th at p. 219.)

Finally, we understand Steinbruner to contend that the order denying her motion to vacate the case management order is void because Judge Gallagher recused himself before the written order was filed on August 16, 2019, after he denied the motion from the bench on August 9, 2019, and then voluntarily recused himself. This contention lacks merit because the record reflects that Judge Gallagher did not voluntarily recuse himself until after he ruled that the motion to vacate the case management order was denied.

### 2.      *Order Denying Motion for Change of Venue*

On appeal, Steinbruner contends that Judge Schmal erred in denying her ex parte application for a change of venue transferring this matter to Sacramento County Superior Court.[5]

"The court may, on timely motion, order transfer of an action '[w]hen the court designated in the complaint is not the proper court.' (§397, subd. (a); see §396a, subd. (b).)" (*Fontaine v. Superior Court* (2009) 175 Cal.App.4th 830, 836 (*Fontaine*).) Further, section 397, subdivision (b) provides that "[t]he court may, on motion, change the place of trial in the following cases:  [¶]  When there is reason to believe that an impartial trial cannot be had therein."

"The standard of review for an order granting or denying a motion for a change of venue is abuse of discretion. [Citation.]" (*Fontaine*, *supra*, 175 Cal.App.4th 830, 836.) "Under that standard, '[t]he trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to

---

[5] Section 400 provides that a party aggrieved by an order granting or denying a motion to change venue may petition for a writ of mandate requiring trial of the case in the proper court. (*Mission Imports, Inc. v. Superior Court* (1982) 31 Cal.3d 921, 927, fn. 4.)  We need not determine whether review is only by writ petition, since, as we will discuss, we find no merit in Steinbruner's contention of trial court error.

the facts is reversible only if arbitrary and capricious.' [Citation.]" (*Gaines v. Fidelity National Title Insurance Co.* (2016) 62 Cal.4th 1081, 1100.)

According to Steinbruner, Judge Schmal erred in denying her motion for a change of venue transferring this action to Sacramento County Superior Court for two reasons: (1) she cannot obtain a fair and impartial hearing in Santa Cruz County because Judge Schmal is biased against her as demonstrated by his conduct in court, including announcing tentative rulings, delaying setting hearing dates, imposing sanctions, and by limiting her argument; and (2) Judge Schmal lacks experience in CEQA cases and there are "four well-seasoned CEQA judges" in Sacramento County Superior Court.

The District argues that Steinbruner has failed to show actual prejudice sufficient for a change of venue under section 397 on the grounds that an impartial trial cannot be held. Additionally, the District argues that Public Resources Code section 21167.1, subdivision (b)[6] requires the designation of judges to develop expertise in CEQA, and does not require CEQA cases to be decided by a designated CEQA judge.

We are not convinced by Steinbruner's contention that a change of venue transferring the matter to Sacramento County Superior Court is warranted because Judge Schmal is not a designated CEQA judge under Public Resources Code section 21167.1, subdivision (b). Steinbruner has provided no authority for the proposition that a CEQA action must be heard by a statutorily designated CEQA judge or that a change of venue transferring the matter to a court with designated CEQA judges is authorized under section 397.

---

[6] Public Resources Code section 21167.1, subdivision (b) states: "To ensure that actions or proceedings brought pursuant to [s]ections 21167, 21168, and 21168.5 may be quickly heard and determined in the lower courts, the superior courts in all counties with a population of more than 200,000 shall designate one or more judges to develop expertise in this division and related land use and environmental laws, so that those judges will be available to hear, and quickly resolve, actions or proceedings brought pursuant to [s]ections 21167, 21168, and 21168.5."

We are also not convinced that transfer to Sacramento County Superior Court is justified because an impartial hearing cannot be held in Santa Cruz County Superior Court due to judicial bias. Even assuming, without deciding, that the phrase "impartial trial cannot be held" in section 397, subdivision (b) may be construed to include an individual judge's alleged bias, we determine that Steinbruner has not made a sufficient showing of bias. We agree with the District that Judge Schmal's conduct in allegedly announcing tentative rulings, delaying setting hearing dates, imposing sanctions, and limiting Steinbruner's argument, is conduct demonstrating management of litigation as provided by Government Code section 68607.

Government Code section 68607 provides in part: "[J]udges shall have the responsibility to eliminate delay in the progress and ultimate resolution of litigation, to assume and maintain control over the pace of litigation, to actively manage the processing of litigation from commencement to disposition, and to compel attorneys and litigants to prepare and resolve all litigation without delay, from the filing of the first document invoking court jurisdiction to final disposition of the action."

Thus, "[a] trial court has the inherent authority and responsibility to fairly and efficiently administer the judicial proceedings before it. [Citations.] This authority includes the power to supervise proceedings for the orderly conduct of the court's business and to guard against inept procedures and unnecessary indulgences that tend to delay the conduct of its proceedings." (*California Crane School, Inc. v. National Com. for Certification of Crane Operators* (2014) 226 Cal.App.4th 12, 22, fn. omitted; see also § 128, subd. (a)(3) [every court has the power "[t]o provide for the orderly conduct of proceedings before it"].)

For these reasons, we conclude that Judge Schmal did not abuse his discretion in denying the motion to change venue.

### 3. *Order Denying Motion for Leave to Amend Writ Petition*

Steinbruner asserts that Judge Schmal erred in denying her motion for leave to file a second amended writ petition because the denial "prevented [her] from amending her First Amended Complaint, and barred her from correcting errors in the complaint, adding new information and allegation of CEQA law violation, and providing supporting exhibits."

The standard of review for an order denying a motion for leave to amend a pleading under section 473 is abuse of discretion. (*Atkinson v. Elk Corp.* (2003) 109 Cal.App. 4th 739, 759-761.) "[S]ection 473, which gives the courts power to permit amendments in furtherance of justice, has received a very liberal interpretation by the courts of this state. [Citations.] In spite of this policy of liberality, a court may deny a good amendment in proper form where there is unwarranted delay in presenting it. [Citations.] On the other hand, where there is no prejudice to the adverse party, it may be an abuse of discretion to deny leave to amend. [Citation]" (*Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App. 4th 525, 544-545 (*Thompson*); see also *Falcon v. Long Beach Genetics, Inc*. (2014) 224 Cal.App.4th 1263, 1280 [appellate court less likely to find abuse of discretion where lack of diligence in offering proposed amendment].)

According to the District, the trial court properly exercised its discretion to deny the motion for leave to amend the writ petition because there was no justification for Steinbruner's seven-month delay in seeking leave to amend or in setting the hearing on the motion at the same time as the hearing on the merits of the petition. The District also argues that the trial court properly found that the lengthy delay was prejudicial because the District would be denied the ability to have the matter heard quickly, as required by Public Resources Code section 21167.1, subdivision (a).[7] Further, the District argues that

---

[7] Public Resources Code section 21167.1, subdivision (a) provides in part: "In all actions or proceedings brought pursuant to [s]ections 21167, 21168, and 21168.5, . . . all

the delay was prejudicial because it jeopardized the District's ability to protect against seawater intrusion and to finance the Pure Water Soquel project.

Steinbruner responds that her delay in seeking leave to amend the first amended writ petition was excusable because she had technical difficulties, and she had to spend time and resources on her efforts to disqualify Judge Gallagher. She also disputes the District's contention that a late amendment of the writ petition would be prejudicial.

Our review of the record shows that Steinbruner filed her original petition for writ of mandate setting aside the District's approval of the Pure Water Soquel project under CEQA on January 17, 2019. Steinbruner then filed an amended writ petition on January 31, 2019. In the June 27, 2019 case management order, the trial court set the original date of October 25, 2019, for the hearing on the merits of the amended writ petition. In an order dated September 3, 2019, the trial court set a new hearing date of November 8, 2019. On October 11, 2019, Steinbruner filed a motion for leave to file a second amended petition for writ of mandate.

The record therefore shows that Steinbruner delayed her motion for leave to file a second amended petition for writ of mandate until approximately nine months after filing the original and amended writ petitions in January 2019, and less than one month before the November 8, 2019 merits hearing. On this record, we determine that the trial court did not abuse its discretion in denying the motion on the grounds that Steinbruner lacked diligence in seeking amendment and that further delay would cause prejudice to the District as the respondent in a CEQA case. (See *Thompson*, *supra*, 155 Cal.App. 4th at pp. 544-545.)

---

courts in which the action or proceeding is pending shall give the action or proceeding preference over all other civil actions, in the matter of setting the action or proceeding for hearing or trial, and in hearing or trying the action or proceeding, so that the action or proceeding shall be quickly heard and determined."

Although Steinbruner may have had technical and other difficulties in litigating as a self-represented litigant, such difficulties do not excuse a lack of diligence in bringing her motion for leave to file a second amended writ petition. We are mindful that our Supreme Court has instructed that a self-represented litigant is not entitled to lenient treatment. (*Rappleyea*, *supra*, 8 Cal.4th at pp. 984-985.)

**4.      *Order Denying Motion to Continue Merits Hearing***

Steinbruner also challenges the trial court's order denying her ex parte application to continue the hearing on the merits that was set for November 8, 2019.

An order denying a motion for a continuance is reviewable on appeal from the judgment. (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527 (*Freeman*).) The standard of review is abuse of discretion, since "[t]rial courts generally have broad discretion in deciding whether to grant a request for a continuance." (*Ibid*.)

"[A]ny error in failing to grant a request for a continuance— whether mandatory or discretionary—is reversible only if it is tantamount to the denial of a fair hearing. [Citations.] There is no presumption of prejudice. (Cal. Const., art. VI, § 13; [§] 475.) Instead, the burden to demonstrate prejudice is on the appellant. [Citation.]" (*Freeman*, *supra*, 192 Cal.App. 4th at pp. 527-528.)

On appeal, Steinbruner contends that the denial of her ex parte application for a continuance of the merits hearing prevented her from conducting further discovery to support the allegations in her proposed second amended writ petition that there was no groundwater overdraft.

The District maintains that the trial court properly denied the ex parte application for a continuance of the merits hearing because Steinbruner's argument regarding her need for additional discovery was based on her attempt to obtain documents from the State Department of Water Resources, which she may not receive or may not be relevant.

We determine that Steinbruner has not met her burden to demonstrate prejudice due to the trial court's denial of her ex parte application for a continuance of the merits

19

hearing. (See *Freeman*, *supra*, 192 Cal.App.4th at pp. 527-528.) Steinbruner primarily argues that a continuance was necessary to allow her time to obtain documents from the Department of Water Resources to support the allegations in her proposed second amended writ petition. However, as we have discussed, the trial court did not err in denying Steinbruner's motion for leave to amend the first amended writ petition. Consequently, the issue of whether the trial court abused its discretion in denying the ex parte application for a continuance of the merits hearing is moot.

### 5. *Order Denying Request for Judicial Notice*

In her opening brief, Steinbruner requests this court to review the trial court's order denying her request for judicial notice because admission of the documents for which she sought judicial notice would have changed the outcome of the hearing on the merits of her writ petition. In particular, Steinbruner asserts that trial court should have taken judicial notice of the document concerning "County Growth Goals for 2020, wherein it is stated that lack of water supply has limited development in Santa Cruz County."

The District argues that the trial court did not abuse its discretion in denying the request for judicial notice for several reasons, including insufficient notice, improperly seeking judicial notice of extra-record evidence, failing to comply with the California Rules of Court, rules 3.1306 and 2.117, and improperly seeking judicial notice of the truth of the matters contained in the exhibits.

The standard of review for an order denying a request for judicial notice is abuse of discretion. (*Physicians Committee for Responsible Medicine v. Los Angeles Unified School Dist.* (2019) 43 Cal.App.5th 175, 182.) We determine that the trial court did not abuse its discretion in denying Steinbruner's request for judicial notice, which sought judicial notice of numerous documents pertaining to water resources and the trial court's records in this matter.

20

In an action under CEQA, "a court generally may consider only the administrative record in determining whether a quasi-legislative decision was supported by substantial evidence within the meaning of Public Resources Code section 21168.5." (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 573, fn. omitted (*Western States*).) "[I]t would never be proper to take judicial notice of evidence that (1) is absent from the administrative record, *and* (2) was not before the agency at the time it made its decision. This is so because only relevant evidence is subject to judicial notice [citations], and the only evidence that is relevant to the question of whether there was substantial evidence to support a quasi-legislative administrative decision under Public Resources Code section 21168.5 is that which was before the agency at the time it made its decision. [Citation.]" (*Id*. at p. 573, fn. 4.) Therefore, evidence outside the administrative record "can never be admitted merely to contradict the evidence the administrative agency relied on in making a quasi-legislative decision or to raise a question regarding the wisdom of that decision." (*Id*. at p. 579; *Voices of the Wetlands v. State Water Resources Control Bd.* (2011) 52 Cal.4th 499, 533, fn.12.)

Steinbruner does not dispute the finding that she improperly sought judicial notice of documents outside the administrative record, such as the document concerning "County Growth Goals for 2020," or the documents that were already part of the administrative record. Accordingly, the trial court did not abuse its discretion in denying Steinbruner's request for judicial notice of documents that were outside the administrative record and therefore irrelevant in this CEQA action. (See *Western States*, *supra*, 9 Cal.4th at pp. 573, fn. 4, 579.

**C.** *CEQA Issues*

We understand Steinbruner to raise three CEQA issues on appeal: (1) the EIR's analysis of growth impacts is inadequate; (2) the EIR's analysis of impacts on

groundwater quality is inadequate: and (3) the EIR's analysis of project alternatives is inadequate.[8,9]

We will begin by reviewing the principles that guide our evaluation of the CEQA issues.

### 1. Overview of CEQA Principles

The California Supreme Court has provided an overview of CEQA principles: " 'The foremost principle under CEQA is that the Legislature intended the act "to be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language." ' [Citations.] 'With narrow exceptions, CEQA requires an EIR whenever a public agency proposes to approve or to carry out a project that may have a significant effect on the environment. [Citations.]' ([Citation]; see Guidelines, § 15002, subd. (f).)[10] The basic purpose of an EIR is to

---

[8] Steinbruner requests that we take judicial notice of several documents in relation to her CEQA issues that she implicitly concedes are outside the administrative record in this case, including (1) the 2007 Soquel Creek Water District and Central Water District Groundwater Basin Management Plan; (2) Soquel Creek Water District's June 3, 2014 Board of Directors meeting minutes and official transcript; (3) "Santa Cruz County 2020 Growth Goals, Staff Report to County Planning Commission on October 23, 2019"; (4) "State Water Resources Control Board Proposition 1 Grant Agreement with Soquel Creek Water District"; (5) "State Water Resources Control Board November 19, 2019 Agenda and staff report"; and (6) a Soquel Creek Water District press release dated November 16, 2019.

We deny the request for judicial notice. As we have discussed, evidence outside the administrative record "can never be admitted merely to contradict the evidence the administrative agency relied on in making a quasi-legislative decision or to raise a question regarding the wisdom of that decision." (*Western States*, *supra*, 9 Cal.4th at p. 579.)

[9] We granted the applications of Scott McGilvray and Rick Longinotti for leave to file briefs as amici curiae in support of appellant. The District filed a response to both amicus briefs.

[10] "The regulations that guide the application of CEQA are set forth in title 14 of the California Code of Regulations and are often referred to as the CEQA Guidelines. [Citation.]" (*Pfeiffer v. City of Sunnyvale City Council* (2011) 200 Cal.App.4th 1552, 1561, fn. 5; hereafter CEQA Guidelines or Guidelines.)

'provide public agencies and the public in general with detailed information about the effect [that] a proposed project is likely to have on the environment; to list ways in which the significant effects of such a project might be minimized; and to indicate alternatives to such a project.'  (Pub. Resources Code, § 21061; see Guidelines, § 15003, subds. (b)-(e).)  'Because the EIR must be certified or rejected by public officials, it is a document of accountability.  If CEQA is scrupulously followed, the public will know the basis on which its responsible officials either approve or reject environmentally significant action, and the public, being duly informed, can respond accordingly to action with which it disagrees.'  [Citation.]  The EIR 'protects not only the environment but also informed self-government.'  [Citation.]"  (*Sierra Club v. County of Fresno* (2018) 6 Cal.5th 502, 511-512, fn. omitted (*Sierra Club*).)

Thus, "[a]s this court has observed, 'the overriding purpose of CEQA is to ensure that agencies regulating activities that may affect the quality of the environment give primary consideration to preventing environmental damage.  [Citation.]'  [Citation.]" (*Save Our Carmel River v. Monterey Peninsula Water Management Dist.* (2006) 141 Cal.App.4th 677, 687.)

### 2.  Standard of Review

"In a CEQA case, the appellate court's review 'is the same as the trial court's: [It] reviews the agency's action, not the trial court's decision; in that sense appellate judicial review under CEQA is de novo.'  [Citation.]" (*Protecting Our Water & Environmental Resources v. County of Stanislaus* (2020) 10 Cal.5th 479, 495 (*Protecting Our Water*).)

Accordingly, "[t]he reviewing court independently determines whether the record 'demonstrates any legal error' by the agency and deferentially considers whether the record 'contains substantial evidence to support [the agency's] factual determinations.' [Citation.]" (*Protecting Our Water*, *supra*, 10 Cal.5th at p. 495.)  " 'Substantial evidence challenges are resolved much as substantial evidence claims in any other setting:

23

a reviewing court will resolve reasonable doubts in favor of the administrative decision, and will not set aside an agency's determination on the ground that the opposite conclusion would have been equally or more reasonable.  [Citations.]' " (*Sierra Club*, *supra*, 6 Cal.5th at p. 515.)  "If the agency's determination 'involves pure questions of law, we review those questions de novo.'  [Citation.]" (*Protecting Our Water*, *supra*, 10 Cal.5th at p. 495.)

" 'Where an EIR is challenged as being legally inadequate, a court presumes a public agency's decision to certify the EIR is correct, thereby imposing on a party challenging it the burden of establishing otherwise.'  [Citation.]" (*California Native Plant Society v. City of Santa Cruz* (2009) 177 Cal.App.4th 957, 987 (*Native Plant Society II*).)

### 3.      *Analysis of Growth Inducing Impact*

On appeal, Steinbruner contends that the EIR's analysis of the growth-inducing impacts of the Pure Water Soquel project is inadequate.

"CEQA requires an EIR to 'include a detailed statement setting forth . . . [t]he growth-inducing impact of the proposed project.'  (Pub. Resources Code, § 21100, subd. (b)(5).)  Section 15126.2, subdivision (d) [now subd. (e)], of the Guidelines explains this requirement obligates an EIR to '[d]iscuss the ways in which the proposed project could foster economic or population growth, or the construction of additional housing, either directly or indirectly, in the surrounding environment.  Included in this are projects which would remove obstacles to population growth (a major expansion of a waste water treatment plant might, for example, allow for more construction in service areas).' " (*Clover Valley Foundation v. City of Rocklin* (2011) 197 Cal.App.4th 200, 226.)

However, "[u]nder CEQA, a public agency is not always 'required to make a *detailed* analysis of the impacts of a project on [future] housing and growth.'  [Citation.] 'Nothing in the [CEQA] Guidelines, or in the cases, requires more than a general analysis

24

of projected growth. The detail required in any particular case necessarily depends on a multitude of factors, including, but not limited to, the nature of the project, the directness or indirectness of the contemplated impact and the ability to forecast the actual effects the project will have on the physical environment.' [Citation].)" (*Muzzy Ranch Co. v. Solano County Airport Land Use Com.* (2007) 41 Cal.4th 372, 388.)

Steinbruner contends that the EIR's analysis of the growth-inducing impacts of the Pure Water Soquel project is inadequate because "an expanded reliable wastewater supply source, would in fact remove all barriers to allowing new service connections in the Soquel Creek Water District service areas, hence removing any barriers to growth."

The District responds that Steinbruner cannot raise the issue of the EIR's adequacy with respect to the growth-inducing impact of the Pure Water Soquel project because she did not raise the issue below in her amended writ petition. Additionally, the District points out that Steinbruner's contentions rely on a document that is outside the administrative record. As to the merits, the District maintains that "substantial evidence in the [r]ecord shows that the EIR properly analyzed potential growth inducing impacts from the Project."

In reply, Steinbruner makes the conclusory assertion that the EIR's analysis of growth-inducing impacts is not supported by substantial evidence. She also argues that her reliance on a document outside the record concerning Santa Cruz County's 2020 growth goals is proper because the document shows that a limited water supply has limited development in Santa Cruz County.

We determine that under the applicable standard of review, Steinbruner has not met her burden on appeal. The standard of review that applies to the EIR's conclusions regarding the growth-inducing impact of a project is substantial evidence. (*Banning Ranch Conservancy v. City of Newport Beach* (2012) 211 Cal.App.4th 1209, 1230.) In the CEQA context, " ' "[s]ubstantial evidence is defined as 'enough relevant information and reasonable inferences from this information that a fair argument can be made to

support a conclusion, even though other conclusions might also be reached.' " ' [Citation.] 'In reviewing for substantial evidence, the reviewing court "may not set aside an agency's approval of an EIR on the ground that an opposite conclusion would have been equally or more reasonable," for, on factual questions, our task "is not to weigh conflicting evidence and determine who has the better argument." ' [Citation.]" (*Ibid*.)

Thus, the party challenging the agency's findings in the EIR must affirmatively show that there is no substantial evidence in the record to support the agency's findings. (*California Native Plant Society v. City of Rancho Cordova* (2009) 172 Cal.App.4th 603, 626 (*Native Plant Society*).) This requires setting forth all of the evidence material to the agency's finding, then showing that the evidence could not reasonably support the finding. (*Ibid*.)

In her briefing, Steinbruner has made no attempt to set forth the District's findings regarding the growth-inducing impacts of the Pure Water Soquel project. Our review shows that the EIR for the Pure Water Soquel project contains an extensive discussion of the project's potential for growth-inducing impacts. For example, the DEIR states, in the chapter on growth-inducing impacts, that "[b]y improving the District's water supply sustainability, the Pure Water Soquel Project would support a degree of planned growth within the District's service area. The Project would not directly contribute to population growth, or the creation of additional housing or jobs within the District's service area, as it would require only limited construction and operation of water supply facilities and infrastructure."

Steinbruner also makes no attempt to show that the evidence in the DEIR could not reasonably support the District's findings regarding the growth-inducing impact of the Pure Water Soquel project. Since Steinbruner has failed to set forth all of the evidence material to the District's findings regarding the project's growth-inducing impacts, and then show that the evidence could not reasonably support the findings, we determine that she has not met her burden on appeal. For that reason, we find no merit in

26

her contention that the EIR is inadequate with respect to the project's growth-inducing impacts. (See *Native Plant Society*, *supra*, 172 Cal.App.4th at p. 626.)

### 4. Analysis of Impact on Groundwater Quality

Steinbruner contends that her writ petition should have been granted because the EIR does not include a final "anti-degradation evaluation and analysis."[11] We understand Steinbruner to thereby argue that the EIR's analysis of the Pure Water Soquel's impact on groundwater quality is inadequate.

The District disagrees that the EIR's analysis of the Pure Water Soquel project's impact on groundwater quality was inadequate, noting that the draft of a 2018 anti-degradation report was not the basis for the EIR's analysis and conclusions. Further, the District asserts that substantial evidence supports the EIR's conclusion that the impact of the project on groundwater quality is less than significant.

"[W]e review solely for substantial evidence" an agency's factual conclusion regarding a project's impact on groundwater. (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova* (2007) 40 Cal.4th 412, 436.) As we have discussed, under the substantial evidence standard the party challenging the adequacy of an agency's findings in the EIR must affirmatively show that there is no substantial evidence in the record to support the agency's findings by setting forth all the evidence material to the findings, and then showing that the evidence could not reasonably support the findings. (*Native Plant Society*, *supra*, 172 Cal.App.4th at p. 626.)

---

[11] The State Water Resources Control Board's resolution No. 68-16, Statement of Policy with Respect to Maintaining High Quality of Waters in California, is known as the antidegradation policy. (*Monterey Coastkeeper v. State Water Resources Control Bd*. (2018) 28 Cal.App.5th 342, 350.) "It sets forth the policy of the state to regulate the granting of permits and licenses for the disposal of wastes into the waters of the state to achieve the 'highest water quality consistent with maximum benefit to the people of the State' and where the quality of water is higher than that established by adopted policies, the higher quality must be maintained 'to the maximum extent possible consistent with the declaration of the Legislature.' " (*Ibid*.)

Therefore, on appeal Steinbruner had the burden to set forth all of the evidence material to the EIR's findings regarding the Pure Water Soquel project's impact on groundwater quality, followed by a showing that the evidence could not reasonably support the finding of no significant impact. Since Steinbruner has failed to do so, she has not met her burden on appeal. Moreover, Steinbruner has provided no authority for the proposition that an EIR's analysis of a project's impact on groundwater quality must include a final antidegradation evaluation. We therefore find no merit in her contention that the EIR is inadequate with respect to the project's impact on groundwater quality. (See *Native Plant Society*, *supra*, 172 Cal.App.4th at p. 626.)

### 5. *Alternatives Analysis*

Finally, Steinbruner contends that the EIR's analysis of alternatives is inadequate. We will begin our evaluation of Steinbruner's contention with an overview of CEQA's requirements for the alternatives analysis.

The California Supreme Court has instructed that "[t]he EIR must set forth not only environmental impacts and mitigation measures to be reviewed and considered by state and local agencies, but also project alternatives [citations]—*including a 'no project'* alternative. ([Guidelines,] § 15126.6.)" (*Friends of the Eel River v. North Coast Railroad Authority* (2017) 3 Cal.5th 677, 713.)

Our Supreme Court has also stated the specific requirements for the alternatives analysis in an EIR: "The CEQA Guidelines state that an EIR must 'describe a range of reasonable alternatives to the project . . . which would feasibly attain most of the basic objectives of the project but would avoid or substantially lessen any of the significant effects of the project . . . .' ([Guidelines,] § 15126.6, subd. (a).) An EIR need not consider every conceivable alternative to a project or alternatives that are infeasible. [Citations.]" (*In re Bay-Delta etc.* (2008) 43 Cal.4th 1143, 1163 (*Bay-Delta*).)

Moreover, as stated in the Guidelines, " '[t]here is no ironclad rule governing the nature or scope of the alternatives to be discussed other than the rule of reason.' "

28

(Guidelines, § 15126.6.)  "The rule of reason 'requires the EIR to set forth only those alternatives necessary to permit a reasoned choice' and to 'examine in detail only the ones that the lead agency determines could feasibly attain most of the basic objectives of the project.' (*Id.*, § 15126.6, subd. (f).)" (*Bay-Delta*, *supra*, 43 Cal.4th at p. 1163.)

In the present case, the DEIR identified three project alternatives, including the no project alternative, the reduced project with surface water purchase alternative, and the local seawater/brackish desalination alternative.  The DEIR determined that the proposed Pure Water Soquel project was the environmentally superior alternative.

Steinbruner contends that the EIR's analysis of alternatives was inadequate because it did not analyze the alternatives of conjunctive water use with the City of Santa Cruz, expanded water rights, or surface water transfers.  Steinbruner also contends that the EIR failed to identify the environmentally superior alternative.

The District argues that Steinbruner's contention that the District did not select the environmentally superior alternative is barred because Steinbruner did not raise that issue below.  Additionally, the District argues that Steinbruner has failed to support her contentions regarding the alternatives analysis with citations to the record, failed to demonstrate prejudicial error, and failed to show that the EIR's alternatives analysis is not supported by substantial evidence.

We reiterate that " '[w]here an EIR is challenged as being legally inadequate, a court presumes a public agency's decision to certify the EIR is correct, thereby imposing on a party challenging it the burden of establishing otherwise.' [Citation.]" (*Native Plant Society II*, *supra,* 177 Cal.App.4th at p. 987.)  Here, Steinbruner has not met that burden with regard to her contentions that the EIR's alternatives analysis is inadequate because it failed to analyze the alternatives of conjunctive water use with the City of Santa Cruz or expanded water rights, or identify the environmentally superior alternative.  Steinbruner merely states these contentions, without "cogent legal argument or citation to authority,"

29

and this deficiency allows us to treat the contentions as waived. (See *Marriage of Falcone*, *supra*, 164 Cal.App.4th at p. 30.)

Further, Steinbruner argues in her reply brief that section 15191 of the Guidelines required the EIR to provide an explanation for not including a "surface water transfers conjunctive use" alternative. This argument is also insufficient to meet Steinbruner's burden. To begin with, " '[p]oints raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument.' [Citation.]" (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.) In any event, Steinbruner's citation to section 15191 of the Guidelines does not support her argument, since section 15191 et seq. concerns affordable housing exemptions under CEQA and is therefore irrelevant. (See *The Flanders Foundation v. City of Carmel-by-the-Sea* (2012) 202 Cal.App.4th 603, 612.)

Further, we observe that Chapter 7 of the DEIR includes an extensive discussion of alternatives that were considered but rejected from further consideration. The discussion specifically addresses an alternative described as "Enter into agreement with the City of Santa Cruz for purchase of excess surface water to meet the full water supply need proposed under the Project" and states the reasons the alternative was rejected.

For these reasons, we determine that Steinbruner has failed to demonstrate that the alternatives analysis in the EIR is inadequate under CEQA.

## IV.    DISPOSITION

The November 26, 2019 judgment is affirmed. Costs on appeal are awarded to respondents.

_____

ELIA, J.

WE CONCUR:



_____

GREENWOOD, P.J.



_____

DANNER, J.



*Steinbruner v. Soquel Creek Water District*
H047733